# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

# STATE OF ARKANSAS

AT THE

## MAY TERM, 1882.

---

St. Louis, I. M. & S. Railway Co. v. Hecht, survg. part.

1. PLEADING: *Allegation of title: Denials.*
   In an action for the destruction of property the allegation of ownership in the plaintiff is material, and a failure to deny it in the answer is an admission of its truth.

2. INSTRUCTIONS: *Modifications; Bill of exceptions must show.*
   When modifications to instructions are excepted to, the bill of exceptions must show the modification, and what the instructions are, as amended; otherwise this court cannot tell whether they are right or wrong.

3. NEGLIGENCE: *Placing burning cars near another's property.*
   A railroad company has the right to detach burning cars from the train and run them off on a spur of the track so as to save the train and main track, unless damages to the property of others are apparent, and the probable result; but if in doing so they stop them near the property of another and it is consumed, they are liable for the injury if by proper care under all the circumstances it could have been avoided.

St. Louis, I. M. & S. Railway Co. v. Hecht, surviving partner.

4. SAME: *Contributory negligence.*

Though a burning railroad car which is run off on a switch to save the train and main track, is negligently stopped so near another's property as to ignite and consume it, the company is not liable for the injury, if the owner of the property, or his agents, or employees, having charge of it, are present and can save it, but refuse to do so; or if they arrive after the property is on fire they must save what they can, or that omitted to be saved will go in mitigation of the damages; but agents or employees of the owner in other business not connected with the property, are under no legal obligation to protect it, and *their* omission to do so is not contributory negligence on the part of the owner.

APPEAL from *Clay* Circuit Court.

Hon. L. L. MACK, Circuit Judge.

*Geo. H. Benton,* for appellant:

1.   Plaintiff failed to prove ownership of the spokes. The allegation of ownership is not such an allegation as the Statute calls material, and requires to be specially denied by the answer. The denial of an allegation of ownership is covered by the general issue. *McClintock* v. *Lacy,* 23 *Ark.,* 215. As the general issue made by defendant's answer was not objected to by motion to make more specific, plaintiff should have proven under the Code all that was necessary to sustain his case under the old practice.

2.   There is no proof of negligence, nor of any act or omission which can be construed as such. The employees had a right to use the spur for the purpose they did to the end, and this use was reasonable under the circumstances, and "a party is not answerable in damages for the reasonable exercise of a right, unless upon *proof* of negligence, unskillfulness or malice." *R. Co.* v. *Yeager,* 75 *Penn.,* st. 121.

The onus to prove negligence was on plaintiff. This is not a parallel case to *Milwaukee R. Co.* v. *Kellogg*, 44 *U. S.*, 469. The burning of the spokes was not "a result reasonably to be expected" from switching the cars. See *Ryan* v. *R'y*, 35 *N. Y.*, 210; *Kerr* v. *R'y*, 62 *Penn.*, 353.

3. As to errors in instructions given and modified, see 27 *Ga.*, 481; *St. L., I. M. & S. Rw'y* v. *Freeman*, 26 *Ark.*; *Milwaukee R'y* v. *Kellogg, supra.*, *Thompson on Neg.*, *Vol.* 1, *p.* 153; *Toledo etc.*, *R'y* v. *Pindar*, 33 *Ills.*, 457. Plaintiff's employees guilty of contributory negligence. *Wharton on Neg.*, *secs.* 301, 877; *Sher. & Red. on Neg.*, *sec.* 335; *Ill. Cent. R'y* v. *McClelland*, 42 *Ills.*, 355; *Ward* v. *R. R.*, 29 *Wis.*, 144.

*U. M. & G. B. Rose*, for appellees:

1. There being some evidence, the verdict will not be disturbed. 31 *Ark.*, 163; *Ib.*, 196.

2. The testimony shows the grossest negligence, perhaps, willful destruction of property.

3. It was not. the duty of defendant to save its own track regardless of injury to others. *Sic utere tuo ut alienum non laedas.*

4. Plaintiff not responsible for failure of his agents employed in other departments of his business to save the spokes. Their acts could only bind him within the scope of their agency.

*Henderson & Caruth*, also for appellees:

The question of negligence was properly submitted to the jury. *Milwaukee R. R.* v. *Kellogg*, 94 *U. S.*, 469. "The care must be proportionate to the danger." *Thomp. on Neg.*, *Vol.* 1, *p.* 153. The loss was the result of careless-

ness, and might have been foreseen. *Toledo, etc., R.* v. *Pindar*, 53 *Ill.*, 457, *and cases cited.*

There was no contributory negligence. The instructions were too rigid against plaintiff. *Vaughan* v. *R. Co.*, 5 *Hurl. & N.*, 679 ; 73 *Penn., st.*, 121 ; 23 *Ib.*, 373 ; 31 *Iowa*, 176 ; 7 *Kan.*, 308 ; 15 *Conn.*, 124 ; 41 *Wis.*, 78.

ENGLISH, C. J. I. The first ground of the motion for a new trial was, that the plaintiff failed to prove his ownership of the spokes.

The action was brought against the St. Louis, Iron Mountain and Southern Railway Company by Levi Hecht, surviving partner of the mercantile firm of Hecht & Brother, composed of plaintiff and Samuel Hecht, deceased.

The complaint alleged, in substance, that on the twenty-seventh of November, 1879, plaintiff was the owner of about 40,000 sawed spokes, of the value of $480.00, which he had placed on a spur switch belonging to the defendant corporation, in the town of Corning, preparatory to having the same shipped to a market. That on said day two cars loaded with cotton, belonging to one of defendant's trains, caught fire, and defendant, by its servants and agents, caused said burning cars to be switched or placed on said spur switch, and by the negligence and unskillfulness of defendant, its agents and servants, said burning cars were allowed to run against said spokes, whereby they were destroyed.

The suit was for the value of the spokes.

The answer of defendant denied that 40,000 were destroyed at the time and in the manner stated by plaintiff. Denied that said sawed spokes alleged to have been destroyed, were worth $480.00, as stated in the complaint. Denied that the loss of the spokes was caused by defendant's negligence or unskillfulness of its servants or agents. Denied that said property was destroyed through any fault

of defendant, but alleged that said property, if destroyed, was so destroyed by the negligence and carelessness of himself or his servants or agents.

The answer did not deny the allegations of the complaint that plaintiff was the owner of the spokes.

At common law, in actions for trespass for injuries to property, the plea of not guilty was a general traverse, and put in issue the allegations of title in the plaintiff. But in the Code pleading there is, strictly, no general issue, and material allegations of the complaint, except as to value and amount of damage, not specifically controverted by the answer, are admitted. *Gantt's Dig.*, sec. 4608.

1. PLEADING: Allegation of title: Denials.

The allegation in the complaint that the plaintiff was the owner of the spokes, was material, for without general or special property in them, he had no right of action for their destruction. The failure of the answer, therefore, to deny the allegation of property in the plaintiff, was an admission of its truth, and he was not required to prove it, as he would have been had it been denied.

There was some proof, however, that the spokes belonged to Hecht & Brother, and it was admitted on the trial that plaintiff was surviving partner of his deceased brother.

II. The second ground of the motion for a new trial was that "the court erred in giving instructions third and fourth asked by plaintiff, against the objection of the defendant."

2. INSTRUCTIONS: Modifications: Bill of exceptions must show.

The bill of exceptions states that "the plaintiff asked for the following instructions." Then they are copied; after which the bill of exceptions further states that "the defendant objected to the giving of the second, third and fourth instructions; the court sustained the objection as to the second, and partially as to the third and fourth, to which ruling of the court, as to the overruling of the defendant's objection to the third and fourth, and giving the same as amended, the defendant excepted."

45–38

. This is all that the bill of exceptions shows about the instructions asked for plaintiff. What modification the court made in the third and fourth, or how they read as amended and given, does not appear. It is impossible for us to decide whether the court erred in giving the two instructions, as modified, without having them before us in the amended form in which they were given to the jury.

No objection was made by defendant to the first instruction asked for plaintiff, and given by the court. It was, that "If the jury find, from the evidence, that certain cars of defendant, loaded with cotton, caught fire, and that its agents, servants or employees, ran said cars into the spur switch, or side track, for the purpose of allowing the same to burn there, and negligently managed said cars, and that plaintiff's spokes were destroyed in consequence, they will find for plaintiff."

The court refused the second instruction moved for plaintiff, which was, in effect, that if the jury found that the property was destroyed by a fire set from defendant's burning cars, negligence on the part of defendant would be presumed, and it is for defendant to rebut such presumption by evidence of due care.

. The third instruction, as it appears by the bill of exceptions to have been moved for plaintiff, was, that "The jury are instructed that the defendant would be liable if they find that defendant had no right to destroy the property of others merely to save its own."

Whether the defendant had the right to destroy the property of others merely to save its own, was a question of law for the court, and not for the jury. It appears from the bill of exceptions, as above shown, that the court modified this instruction, but in what form it was given is not stated. But it does appear, in an after-part of the bill of exceptions, as will be particularly shown below, that the

court charged the jury that it was the paramount duty of the employees of defendant in charge of the train to save the rest of the train and the main track from destruction and damage, if they could *do so* without damage to the property of others, etc.

The counsel for appellant admits that the objection to the fourth instruction moved for plaintiff, and given in some modified form not appearing, was removed by the eighth instruction given by the court of its own motion.

So we find nothing in the second ground of the motion for a new trial.

III.   The third ground of the motion for a new trial was, that the court erred in modifying instructions second, third and sixth, and in refusing the fourth and seventh asked by defendant.

Before considering these instructions, and others given by the court of its own motion, the giving of which was made the *fourth* ground of the motion for a new trial, it is proper to state the substance of the evidence, introduced on the trial, to which the instructions related.

3.   NEGLIGENCE: Placing burning cars near another's property.

It appears from the evidence that the spur switch, mentioned in the complaint, started from the west side of the main railway track, north of the depot at Corning, and ran south, near to Harb's factory.   The witnesses for the plaintiff stated that it was from one hundred and fifty to one hundred and seventy-five feet long.   Pierce Galvin, witness for defendant, and section foreman at Corning, stated, on his examination in chief, that it was about one hundred and twenty feet long, but, on cross-examination, he said it would hold about seven cars.   The length of flat cars used for carrying cotton was proven to be twenty-eight feet. If the switch would hold seven of them it must have been one hundred and ninety-six feet long.   It had a slight down grade from the main track.   It was used for loading spokes,

staves and lumber, from Harb's factory, for putting off freight, and for taking cars from and putting them on the main track.

Hecht & Bro. directed to be piled, for the convenience of shipment, about 31,618 wheel spokes, sawed at Harb's factory ; on the west side of the spur switch, the pile commenced below the end of the switch and extended up to it toward the main track, about twenty-five feet, was, say five feet high, and six feet distant from the west side of the switch. The pile was in four separate lots, stacked near each other and in the same line.

About three o'clock of the night of the twenty-seventh of November, 1879, a north bound freight train of the defendant corporation had stopped at Corning, waiting for orders. It was on the main track, near a hotel. It seems the two rear flat cars were loaded with cotton. When the conductor discovered one of them to be on fire, he caused the train to be moved forward on the main track to the spur-switch, and the two cotton cars to be backed on to, and down it until the hind trucks of the end car went over the terminus of the switch, where the two cars aflame, were left and burned. The spokes caught fire from the blazing cotton cars, and were all burned, except about three or four thousand, which were saved by employees of the defendant and of Hecht & Bro. At the time the conductor discovered the cotton to be on fire, he regarded the hotel and adjacent buildings, as well as the main track, to be in danger, and hence caused the burning cars to be put on the switch, and detached from the train there. The wind was blowing, and there were indications of a storm. Had the burning cars been stopped by brakes, or "chunking," as some of the witnesses said might have been done, after they cleared the main track, both it and the pile of spokes would have been safe from the fire.

St. Louis, I. M. & S. Railway Co. v. Hecht, surviving partner.

The jury found a verdict in favor of plaintiff for $300. Other features of the evidence will be noticed below.

The defendant moved for seven instructions, the first of which the court gave, and which was as follows:

(1.) "If the jury find from the evidence that the employees of defendant, after discovering that the cotton was on fire, were not guilty of negligence in their effort to switch the burning cars into the spur of the railroad, but used ordinary caution in doing the same, under the circumstances at the time, to prevent any unnecessary damage, they will find for defendant."

The second instruction moved for defendant follows:

(2.) "In order to hold defendant liable in this case, the jury are instructed that the burden of proof is on the plaintiff to show that the employees of defendant were guilty of negligence at the time of the occurrence, directly causing or contributing to the injury; and the negligence which will make the defendant liable is such negligent conduct on the part of the employees of the defendant at the time, knowing that the property of the plaintiff was in danger, as would amount to the performance or omission of some act which directly caused the damage alleged by plaintiff, and which a prudent business man, under all the circumstances at the time, would not have done, or omitted, and not the performance or omission of any act which subsequently, on reflection, might be supposed to have been possible in order to avoid the damages."

The court overruled part of this instruction, and gave it in a modified form as follows:

"In order to hold the defendant liable in this case, the jury are instructed that the burden of proof is on the plaintiff, to show that the employees of the defendant were guilty of negligence at the time of the occurrence, directly causing or contributing to the injury; and the negligence which will

make the defendant liable, is the performance of, or the omission of some act, (with a knowledge of danger to which property was liable on account of such act or omission,) which no man of ordinary prudence would perform or omit under all the circumstances existing at the time."

The instruction as given, as far as it goes, is substantially the same as that asked for defendant. As given, it embodies two propositions : First, that the burden of proving negligence was on the plaintiff ; and second, that negligence is the performance of, or the omission of some act (with knowledge that another's property is liable to danger) which no man of ordinary prudence would perform or omit, under all the circumstances existing at the time.

This definition of negligence, as applicable to the case before the jury, was substantially correct and sufficient. *Bizzell* v. *Booker et al*, 16 *Ark.*, 308.

Negligence has been variously defined.

Says Mr. COOLEY, ( *Cooley on Torts, p.* 630) : "All the circumstances are to be taken into account when the question involved is one of negligence ; for negligence in a legal sense is no more nor less than this, the failure to observe, for the protection of the interest of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury."

Negligence has been briefly defined to be, the absence of care, according to the circumstances. *Philadelphia, Wilm. & Balt. Railroad Co.* v. *Stinger*, 78 *Penn., State*, 225.

The court omitted the last clause of the instruction as asked for defendant, which was, in effect, embraced in the definition of negligence, as given.

(3.) The third instruction as moved for defendant, was as follows :

"The jury are instructed that it was the paramount duty

of the employees of the defendant, in charge of the train, to save the rest of the train and main track from destruction and damage, and that they had a right to use the spur for that purpose—to switch off on it the burning cars ; and that subject to this duty was that of avoiding unnecessary damage to the property of the plaintiff, knowing it to be on the side track or spur.''

The court refused this instruction as asked, but gave it in the following modified form :

''The jury are instructed that it was the paramount duty of the employees of the defendant, in charge of the train, to save the rest of the train and the main track from destruction and damage, if they could do so without damage to the property of others, being apparent and the probable result.''

The instruction, as given, was more in harmony than as asked, with the maxim, *sic utere tuo ut alienum non lœdas—* enjoy your own property in such a manner as not to injure that of another person.

Though a man do a lawful thing, yet if any damage thereby befalls another, he shall be answerable, if he could have avoided it. *Broom's Legal Maxims, p.* 275–6.

The rest of the train might have been saved by detaching the two burning cars and leaving them on the main track, after they had been moved forward far enough to place the hotel and other adjacent property out of danger. But the evidence conduces to prove that it would have been a greater loss to the company and inconvenience to the public for the two cars to burn on the main track and destroy part of it than to switch them off on to the spur and to allow them to burn there as was done. The spur belonged to the defendant, and its agents had the right to place the burning cars on it for the purpose of saving the main track, unless, as the court charged the jury, damage to the property of others was apparent, and the probable result. For though the spur

belonged to defendant, it appears that it had been run out near to Harb's factory for the purpose of taking on and putting off freight there, and plaintiff's spokes, sawed at the factory, had been piled near the spur for convenience of loading on to the cars, and it is not shown or claimed that they were wrongfully placed there. Moreover, the evidence conduces to prove that the two burning cars might have been placed on the spur, clear of the main track, and far enough from the spokes to save them from the fire. So, though the defendant's agents had the right to use the spur to save the main track, yet defendant was answerable for damage thereby caused to plaintiff's property, if by proper care, under all the circumstances, it could have been avoided.

(4.) In lieu of the fourth instruction moved for defendant, the court gave the following:

"The fact that the cars ran off at the end of the track (spur) is not sufficient of itself to make defendant liable. But to render defendant liable, that circumstance must have been the result of carelessness or neglect of those having charge of the cars or train, and must have contributed to the burning of the spokes."

It is not submitted here that the court erred in giving this instruction instead of the fourth as asked.

It was in evidence that there were cross-ties piled at the end of the spur-switch for the cars to "bunk" against, and that these were forced away by the trucks of the car, which went over the end of the switch, and this brought the two burning cars a little further along the line of the pile of spokes than they would have been if they had been stopped at or before reaching the end.

(5.) The court gave the fifth instruction as moved by defendant, which was:

"The jury are instructed that the plaintiff, in placing his spokes along the track or spur of the railroad, assumed all

**MAY TERM, 1882.**                    369

St. Louis, I. M. & S. Railway Co. v. Hecht, surviving partner.

the risk of damage to them occasioned by unavoidable accident or mischance, and that if the jury believe they took fire from the burning cars, accidentally and unavoidably, and without negligence of defendant, they will find for the defendant.''

(6.) The sixth instruction moved for defendant, was: 

*4. ——: Contributory negligence of employees*

''The jury are instructed that it was the duty of the plaintiff, or of his agents or employees, when the danger was discovered by them, to which the spokes in controversy were exposed, to save them if possible ; and if the jury believe that they could have saved them by the exercise of ordinary care and diligence, they will find for the defendant, even if they find the defendant guilty of negligence.''

This instruction was given by the court in a modified form, as follows :

''The jury are instructed that it was the duty of the plaintiff, or his agents or employees, *having the care or charge of said spokes, if present*, when the danger was discovered by them, to which the spokes in controversy were exposed, to save them if possible ; and if the jury believe that they could have saved them by the exercise of ordinary care and diligence, they will find for defendant, even if they find the defendant guilty of negligence.''

*Who are employees*

It will be observed that the only modification made by the court of the instruction, as moved, was by the insertion of the words ''*having the care or charge of said spokes, if present*,'' between the word ''*employees*'' and the word ''*when*.''

This was a proper modification of the instruction, in view of the evidence before the jury. The two cars loaded with cotton, on fire, were switched on to the spur and left there, about 3 o'clock at night, when there were no persons present but such as were in charge of the train. It was not shown that the plaintiff, or any agent of his in care of the

46–38

spokes, was present when the burning cars were put on the spur and left alongside of the pile of spokes.

There was evidence that some of the employees of plaintiff were afterwards present.

The bill of exceptions states that the court orally explained the sixth instruction as given to mean, "that the employees of plaintiff, about any other business, were not obliged to do anything to save the spokes;" to which defendant excepted.

In *Illinois Central R. R. Co.* v. *McClelland*, 42 *Ill.*, 356, McClelland sued the Illinois Central Railroad Company for the burning of a certain rail fence, and the grass and hay upon twenty acres of meadow adjacent to the railroad track.

There was evidence that in July, 1864, a passing engine of defendant set fire to the grass on the right of way near plaintiff's meadow fence. That at the time the son of the plaintiff, and in his employ, saw the fire while on his way to the house, and that forty or fifty minutes afterwards he returned and found the fire had got into the meadow.

The circuit judge refused to charge the jury, that "If the son and servant of the plaintiff saw the fire in time to put it out, while it was on the right of way, before it reached the plaintiff's meadow, it was his duty to do so. And if, through his negligence in not doing so, the fire consumed the property of the plaintiff, the defendant would not be liable therefor."

On error, the Supreme Court held that this instruction should have been given. Justice BRUSE, who delivered the opinion of the court said: "It was a proper subject of inquiry by the jury: Could the plaintiff's son and servant, by the exercise of reasonable diligence, have prevented the spread of the fire? He saw the fire in time to arrest its progress, or at any rate in time to make some effort to that end, but did not choose to do so. He left the scene and was absent near an hour, and on his return the fire had

reach the meadow. Common prudence required he should have made some effort to prevent this, and it was negligence on his part, for which the plaintiff is answerable, that he did not. The fire in the meadow in July may be charged to the negligence of the plaintiff's son, who was in a position to have prevented it." Cited in *Wharton on Negligence*, .sec. 877.

It appears that one or two persons in the employment of Hecht & Bro., and others in the employment of defendant, .saved such of the spokes as were not burned, by removing them from the pile after it took fire from the burning cars. It is probable that more of the spokes could have been .saved if the employees in charge of the train had remained after the burning cars were switched on to the spur, and engaged in removing the spokes. It also appears that some persons in the employment of Hecht & Bro., came to the fire after the alarm was given, and while the spokes were burning, who might have saved some of them if they had engaged in removing them, but like other bystanders who had collected there, they did nothing.

Hecht & Bro. had a store at Corning, and George Huntly was employed by them to attend to receiving and weighing cotton. He lived about four hundred yards from Harb's factory. Awaked by the alarm of fire, about 3 o'clock in the night, he supposed the factory was on fire; ran down to it, and found the two cotton cars all ablaze on the spur, and the engine and the rest of the train on the main track. The fire from the blazing cars was rolling up "awful high." He said to the men around there, "we ought to try to get the cotton away." When he got there, a man he took to be an employee of defendant was standing on the pile of .spokes, and heard him say he "would not give a damn if they did burn," and he got down and went to the engine. Witness tried to get men to help save the spokes, but was

told the railroad company would be responsible for burning them anyway. The spokes' business did not concern him at all. He was employed to receive and weigh cotton. He thought he was not responsible for the spokes. He could have thrown away from the fire as many as he had a mind to. Did not know whether he could have saved any by hiring or getting men there to save them or not. He did not see any one else in the employment of Hecht there.

Another witness, A. J. Harb, got to the spur after the train had left, and when the spokes were on fire, and they continued to burn up to 8 o'clock in the morning. He was of the firm of Harb Brothers, and went to work carrying away their stock, which was saved. Mr. Imboden, employed in Hecht's store at Corning, was at the fire when he got there. He also noticed there Morris Hecht, nephew of plaintiff, and in charge of the business at Corning. It was about 4 o'clock when witness got there. There were four lots in the pile of spokes, piled close together. The first lot had burned up, and the second was on fire when he got there. Imboden and Morris Hecht did nothing. A great many spokes might have been saved after witness got there. There were many men standing there, and witness never saw men less lively at a fire. They would not do anything at all.

It was no doubt the duty of Morris Hecht, who was perhaps in charge of the general business of Hecht & Bro., at Corning, to do anything in his power to save such of the spokes as might have been saved after he got to the fire, even if the negligence of the employees was the proximate cause of the pile of spokes being set afire. It may be said that the spokes were in his care or charge as the general business agent of plaintiff, and his deceased partner; and in the sixth instruction, as given, the court charged the jury that it was the duty of plaintiff, or his agents or

employees having the care or charge of the spokes, if present, etc., to save them if possible, etc.

But was it the legal duty of George Huntley, employed to attend to receiving and weighing cotton, and of Imboden, employed in the store of Hecht & Bro., at Corning, to engage in the labor of removing and saving spokes when they got to the fire, and was the plaintiff chargeable with contributory negligence by reason of their failure to do so?

*Employee in other business not bound to diligence.*

We think not. They were no doubt under a moral obligation to do anything in their power to save the spokes of their employers, and the by-standers were under a neighborly obligation to do so.

Huntley and Imboden did not sustain the same relation to plaintiff, as to the spokes, that the son and servant of the Illinois farmer did to his father and his fence and meadow, nor are the facts of this case and that alike.

The court did not err in orally explaining the sixth instruction, as stated in the bill of exceptions, and above shown.

The pile of spokes was probably on fire when Morris Hecht got there, and if on fire by the negligence of the employees of defendant, his failure to labor to save as many of the spokes from burning as he could, was not the proximate contributory cause of the fire, and did not excuse defendant from liability, but was matter in mitigation of damages to the extent of the value of such of the spokes as he might have saved by the care incumbent on him under the circumstances. How many spokes he might have thrown away from the encroaching fire after he got there, had he been active instead of idle, does not appear. Not as many, perhaps, as the employee of defendant whom Huntly found on the pile when he got there, and who, it seems abandoned the spokes with an oath that "he did not care a dam if they did burn," and left.

(7.) The seventh instruction moved for defendant, was :

The jury are instructed that if the plaintiff placed his spokes too near the track of the defendant's railroad, and in this way exposed them unnecessarily to danger and loss, and left them without a watchman or proper agent to care for them, these circumstances will enable the jury to determine whether the plaintiff was guilty of contributory negligence, and if they find the plaintiff guilty of contributory negligence, they will find for defendant, unless the jury find that the defendant, after discovering the danger to which they were exposed, could have avoided the injury by the exercise of ordinary care."

The court substituted for this instruction the following :

"In considering the question of contributory negligence on the part of the plaintiff, the jury will look to all the circumstances, the time of the day or night the fire occurred, and if the plaintiff had no watchman, or other person in care of his spokes ; if not, whether a man of ordinary prudence would have had some one there in charge at that time, and under such circumstances, if so, were the spokes lost thereby ; if plaintiff or his employees, in charge of the spokes were present, did they use proper diligence to save the spokes? These are all questions for the jury under all the circumstances in proof."

The question of contributory negligence on the part of the plaintiff, as well as the one of negligence on the part of defendant, was for the jury under all the facts and circumstances in evidence. The instruction as moved for defendant indicated but two hypothetical facts to be considered by the jury in determining the question of contributory negligence ; while that given by the court submitted the question to them upon all of the facts and circumstances in proof, which was proper.

IV. The fourth ground of the motion for a new trial was

that the court erred in giving instructions of its own against the objection of the defendant, instead of instructions four and seven asked for by defendant.

We have above considered the instructions given by the court instead or in modification of four and seven, asked for defendant.

(8.)    Instruction numbered eight, which was given by the court of its own motion, and which was not objected to by defendant, was :.

"If the jury find the defendant guilty of negligence, they will find for the plaintiff the value, on the ground at the time, of such part only of the spokes as were burnt and destroyed by the negligence of the defendant, and which the plaintiff could not have saved by the exercise of ordinary care."

Upon the whole, looking at all of the instructions, as given by the court, the questions of negligence, contributory negligence, and damages were fairly submitted to the jury without error prejudicial to defendant below, and appellant here.

V.    The fifth ground of the motion for a new trial was that the verdict was contrary to law, and not supported by the evidence.

As above indicated, there was evidence conducing to prove that the employees of appellant might, by ordinary care, and the use of usual means, have switched the burning cars on to the spur and stopped them, after they had cleared the main track, far enough from the pile of spokes to save them from the fire, as well as the main track.    Instead of doing this, it is probable that they were forced back, by the engine moving the train, to and over the end of the spur and left alongside of the upper end of the line of the pile of spokes, which caught fire from them.

The spokes, recently sawed at the factory, had been piled there for the convenience of loading, as was usual, to be sent

St. Louis, I. M. & S. Railway Co. v. Hecht, surviving partner.

to market on appellant's cars. The pile, in four contiguous lots, commenced below the end of the spur and extended up along it about twenty-five feet, and about six feet from it. The middle of the pile was about the end of the spur, and the spokes caught fire there.

We cannot say that there was not evidence to warrant the verdict.

VI. The sixth and last ground of the motion for a new trial, that the verdict was excessive, has not been noticed in the brief of appellant's counsel.

Looking at the evidence as to the number of spokes in the pile, the value of them on the ground at the time, the probable number burned, and the amount of damages assessed, the jury, perhaps, made some abatement for the value of such spokes as Morris Hecht might have thrown from the burning pile, had he engaged in that work.

*Interest to be added as damages.* We find in the evidence no clear ground on which we could award a new trial for excess in the verdict. In estimating damages the jury might have allowed interest on the value of the spokes from the time they were burned to the date of the verdict, which does not appear to have been done.

Affirmed.