[ Filed June 21, 1890. ]

## A. E. EATON, Appellant, *v.* THE OREGON RAILWAY AND NAVIGATION COMPANY, Respondent.

Causes of Action to be Separately Stated—When Defect Cured.—While, under the Code, each cause of action must be separately stated with the relief sought so as to be intelligently distinguished, yet, where the corporate existence of the defendant and the ownership of its road is not only made certain by reference but the answer supplies the defect in each count; *held,* that, in the absence of a demurrer specifying the objection after the evidence was submitted, the objection comes too late.

Company Owning or Operating Unfenced Road Liable for Stock Killed.—The purpose of our statute is to make the railroad company owning the road, or the company operating the road, liable, so that either may be sued, as the plaintiff may elect, who has sustained injury to his live stock by a moving train upon its unfenced track.

When Owner in Position to Prevent Damage to His Property by Fire and Neglects to Do It, Such Neglect will Bar His Recovery.—If the plaintiff was in a position to have prevented any damage from fire to his property without incurring unusual danger, and made no effort to do so, it was negligence on his part and precludes his right of recovery.

APPEAL from Union county: J. A. FEE, judge.

The complaint set forth ten causes of action, eight of which grew out of the alleged injury or killing of stock belonging to the plaintiff, and the other two by reason of fires alleged to have been set out by engines belonging to the defendant. Issue was joined on each cause of action, and after the plaintiff had submitted his evidence at the trial, the defendant moved for a non-suit on the ground that there was no allegation of the corporate existence of the defendant and its ownership of the road except in the first count of the complaint. The court granted the motion as to the last nine causes of action, but refused its

as to the first cause of action, upon which there was a trial, verdict and judgment for the plaintiff, from which the defendant appealed, and the plaintiff appealed from the judgment of non-suit, which is now to be considered.

*R. Eakin* and *T. H. Crawford,* for Appellant.

*W. W. Cotton* and *Gilbert & Snow,* for Respondent.

LORD, J., delivered the opinion of the court.

Under the Code it is required that each cause of action must be separately stated, with the relief sought, so as to be intelligently distinguished. In the first count, the averment is distinctly made of the incorporation and ownership of the road by the defendant. In the succeeding counts such averment is not repeated, but it is made certain by reference to the first count; and in the answer the incorporation, corporate existence and ownership of the railroad is directly admitted and averred. It is no doubt true that the complaint must state all the facts which constitute the cause of action embraced in it, and its defects cannot be supplied from other statements. But here the fact of the corporate existence of the defendant and its ownership of the road is not only distinctly made certain by reference, but the answer supplies the defect in the allegation, so that in the absence of a demurrer specifying the defect, after the evidence is submitted, the objection comes too late, and ought not to prevail. Defects of this character should be pointed out before answering and going to trial, otherwise, when the defects complained of are supplied by the answer, and the defendant is content to go to trial, he will be precluded from raising them.

The next objection is that the defendant company was not operating the road alleged to be owned by it which caused the alleged injuries to the plaintiff. This objection is based on the assumption that our statute declaring railroad companies liable for the value of live stock killed upon or near its unfenced track, does not apply to the

owner of the road, unless such owner was actually operating
the road which caused the injury.    That statute provides:
"Any   *   *   *   company, or corporation, or lessee or
agent thereof, owning or operating any railroad within
the State, shall be liable for the value of any horses,
*   *   *   killed, and for reasonable damages for any injury
to any such live stock upon or near any unfenced track
of any railroad in this State whenever such killing or
injury is caused by any moving train or engine or cars
upon such track."    Hill's Code, § 4044.    We think it is
plainly the purpose of this statute to make the company
owning the road, and the company operating the road,
liable, and that either may be sued, as the plaintiff may
elect, for the injury which he may have sustained to his
live stock by a moving train upon any unfenced railroad
track.    Its language is that "any company owning or operat-
ing" shall be liable, etc., which means, either the one or the
other shall be liable, and not that the one operating the
road at the time of the accident must be the owner in order
to render it liable within the terms of the statute.    This is
the view taken in *Hindman* v. *Railroad Co.*, 17 Or. 619, in
which THAYER, C. J., said:    "Under these provisions, it
would seem that a plaintiff is entitled to recover against a
railroad company for the killing or injury of his stock, by
alleging and proving that the company *owned or operated*
the railroad, that its track was unfenced, etc.," which
plainly means that it would be sufficient, under the statute,
to allege and prove the facts of killing or injury of such
animals, either against the company which owned or the
company which operated the railroad upon its unfenced
track, to entitle the plaintiff to recover.    As this disposes
of all the objections which we deem it necessary to consider
under the motion for non-suit, it results that the judgment
must be reversed as to the second, third, fourth, fifth,
sixth, and seventh causes of action; and as to the eighth,
ninth, and tenth, we shall proceed briefly to consider them
separately.

The eighth cause of action, as set forth in the complaint,

is based on the common law liability for negligence in killing a steer upon the track of the defendant at a point where it crosses the county road.    The evidence in respect to the point where the killing occurred is, that "the stock were struck on the railroad track in the lane.   The lane is a county road."   The only question, then, to be considered, is, whether any negligence is shown on the part of the company.   While it does not appear directly that the train which the witness saw, when it passed, killed the animals that were found dead and crippled, at the crossing, yet assuming that such was the case, it does not appear that the company or its agents omitted to exercise any precaution necessary under the circumstances.   The witness does not know whether the bell was rung or the whistle was sounded, or that every precaution was not observed consistent with a due regard for the safety of the train.   In such case, in the absence of any proof of negligence, the defendant's motion for non-suit was properly granted as to this cause of action.

The ninth cause of action as set forth in the complaint is based on the negligence of the defendant in allowing fire to escape from its engine whereby a growth of dry grass, which had been left uncut by the plaintiff for fall and winter feed, was burned and destroyed.   The ground upon which the motion for non-suit now to be considered is based, is whether, from the plaintiff's evidence, he was guilty of contributory negligence.   It appears from the testimony that the fire was burning close to the railroad track on the right of way of the defendant when the plaintiff first saw it.   The plaintiff testifies:   "I was on my way down to my pasture near the field.   I saw a smoke start up and get larger until we got near it.   We saw that the grass in my field north of the Stafford lane was on fire.   I was within one-quarter of a mile of the fire, going to the Union depot, when I saw it. Just before we saw the first smoke we had noticed a train pass toward the Union depot, going east.   We went on and watered my horses that were in the pasture; there

was a large band, and it took some time; and then I went up to the depot to notify the section boss and station agent.    When we got down to where the fire was, it had spread out and was burning fast.    There was one hundred acres burned at that time, and it was worth $7 an acre for fall and winter feed.    I left it uncut for that purpose.    I made no effort to put the fire out.    It was none of my business; it was the business of the railroad company.    I had two men with me at the time.    The fire was burning close to the railroad track when we first saw it; it was on the right of way of the defendant." From this testimony it clearly appears that when the plaintiff first saw the fire it was burning close to the railroad track and on the right of way of the defendant, and as the train had just passed, had been set out only a short time, and had not reached the field of uncut grass which was subsequently destroyed; that at that time he had two men with him and was within a quarter of a mile of the fire, and that instead of taking some measure, or making some effort to put out the fire, he went on and watered his horses that were in the pasture, and as the band was large, he says, it took sometime, but when he was done he then went to the depot, more than a mile away, to notify the section boss or the station agent.    When all this was done and finally "we got down to where the fire was, it had spread out and was burning very fast; there was a hundred acres burned at that time." Considering that the fire when first seen by the plaintiff had just started, and was then only burning on the railroad track, and that the plaintiff with two men was in a short distance of it, but that before he went to water his horses it was in his field, it is clear that if he had made reasonable efforts his property could have been preserved. There is nothing in the circumstances as detailed by himself to prevent the fire spreading and saving his uncut grass which required any unusual effort or involved any great danger.    His indifference is explained by his own testimony when he states:    "It was none of my business; it was the business of the railroad company to put the fire

out." This is the reason he "made no effort to put the fire out." But if he was in a position to have prevented any damage from fire, it was his business, and if he made no effort to do so, it was an act of negligence on his part w...ch precludes a recovery. Said Breese, J.: "He saw the fire in time to arrest its progress, or at any rate to make some effort to that end, but did not choose so to do. He left the scene and was absent near one hour, and on his return the fire had reached the meadow. Common prudence requires that he should have made some effort to prevent this, and it was negligence on his part that he did not." *Railroad Co. v. McClelland,* 42 Ill. 359. "Even if the appellant were guilty of negligence," said Walker, J., "the appellees are bound to use reasonable efforts to preserve their property. When the fire escaped they had no right to fold their hands and permit their property to be consumed without an effort for its preservation, and then claim the right to recover loss from the company." *Railroad Co. v. Pindar,* 53 Ill. 451. Other cases might be cited of like import, but these are sufficient to illustrate the principles involved. His neglect to try to stop the fire when he first saw it burning, and when, with reasonable exertion, all damage from it to his property could have been avoided, with slight effort and without danger, precludes his right of recovery. The motion for non-suit was rightly sustained to this cause of action as well as the tenth and last cause of action embraced in the complaint, to which we do not deem it necessary to make further reference than to say the proof submitted by the plaintiff is insufficient to sustain it.

It follows that the judgment must be reversed as to the second, third, fourth, fifth, sixth, and seventh causes of action, but affirmed as to the eighth, ninth, and tenth causes of action, and it is so ordered.