[Decided at PENDLETON July 31, 1897.]

## RICHMOND *v.* McNEILL.

(49 Pac. 879.)

CONTRIBUTORY NEGLIGENCE A BAR TO RECOVERY OF DAMAGES.—A person who, by a slight effort and without danger to himself, would have avoided the destruction of his property, but did not do so, is chargeable with such contributory negligence as will prevent his recovery from the person who caused the injury: *Eaton* v. *Oregon Railway and Navigation Company*, 19 Or. 391, approved.

RAILROAD FIRE — NEGLIGENCE — NONSUIT.—A plaintiff in an action against a railroad company for damages to land caused by fire which spread from combustible material negligently left along the company's right of way and ignited by a passing locomotive, cannot be charged with such negligence as will support a nonsuit, when his servant who was in charge of the property went with reasonable diligence to the scene of the fire, and made some effort to perform his duty, the degree of which is a question of fact for the jury.

PROVINCE OF JURY — QUESTION OF FACT.—Where different deductions may reasonably be drawn from testimony the matter should be left to the jury.

RAILROADS — PRESUMPTION OF NEGLIGENCE.—Evidence tending to show that a railway company negligently left along its track combustible material, which was discovered to be on fire soon after the passing of a train, and plaintiff thereby suffered damage, raises an inference that the fire was caused by sparks from the engine, which the company must rebut.

From Union: STEPHEN A. LOWELL, Judge.

Action by F. L. Richmond and W. T. Wright against E. McNeill, receiver of the Oregon Railway and Navigation Company. From a judgment for defendant, plaintiffs appeal.

REVERSED.

For appellants there was an oral argument by *Mr. George E. Chamberlain*, with a brief over the names of *Frank A. E. Starr*, and *Chamberlain & Thomas*, urging these points:

The rule is well established by the great preponderance of authorities that a railway company must keep its track and right of way clear of all such substances as are liable to be ignited by sparks or cinders from its engines. This is a duty clearly implied in the grant or charter which confers the right to use steam engines. As fire is a dangerous agent, it is but reasonable to presume that the legislature in making the grant annexed the implied condition that the track and right of way shall be kept in such condition as to avoid danger from fire spreading therefrom: 8 Am. and Eng. Enc. Law (1st ed.), 14; *Jones* v. *Michigan Central Railway Company*, 59 Mich. 437; *Richmond, etc., Railway Company* v. *Medley*, 75 Va. 499; *Indiana Railway Company* v. *Oberman*, 110 Ind. 538; *Gibbon* v. *Wisconsin Railway Company*, 66 Wis. 161; *Delaware, etc., Railway Company* v. *Salmon*, 39 N. J. L. 299; *Toledo, etc., Railway Company* v. *Ward*, 48 Ind. 476; *Pittsburg, etc., Railway Company* v. *Nelson*, 51 Ind. 150; *Burlington, etc., Railway Company* v. *Westover*, 4 Neb. 268; *Herry* v. *Southern Pacific Railway Company*, 59 Cal. 578; *Henry* v. *Southern, etc., Railway Company*, 50 Cal. 176; *Flynn* v. *San Francisco, etc., Railway Company*, 40 Cal. 14; *Kesee* v. *Chicago, etc., Railway Company*, 30 *Iowa*, 78; *Troxler* v. *Richmond, etc., Railway Company*, 74 N. C. 377; *Kellogg* v. *Chicago, etc., Railway Company*, 26 Wis. 223; *Brighthope Railway Com-*

*pany* v. *Rogers,* 76 *Va.* 443; *Pittsburg, etc., Railway Company* v. *Nelson,* 51 Ind. 150.

Where the plaintiffs use their land in a natural and proper way, they are not chargeable with contributory negligence from a failure to take precautions against the negligence of a railway company: *West* v. *Chicago Railroad Company,* 35 N. W. 479; *Burlington Railroad Company* v. *Westover,* 4 Neb. 268; *Kellogg* v. *Chicago, etc., Railroad Company,* 26 Wis. 223; *Clemens* v. *Hannibal, etc., Railroad Company,* 53 Mo. 366; *Patton* v. *St. Louis, etc., Railroad Company,* 87 Mo. 117; *Cook* v. *Champlain,* 1 Denio, 91; *Fero* v. *Buffalo, etc., Railroad Company,* 22 N. Y. 209; *Kalbfleisch* v. *Long Island Railroad Company,* 102 N. Y. 520; *Lindsay* v. *Winona & St. Paul Railroad Company,* 29 Minn. 411; *Karson* v. *Milwaukee, etc., Railroad Company,* 29 Minn. 12; *Philadelphia Railroad Company* v. *Hendrickson,* 80 Pa. St. 182; *Philadelphia Railroad Company* v. *Schultz,* 93 Pa. St. 341; *Richmond, etc., Railroad Company* v. *Medley,* 75 Va. 499.

Whether or not the plaintiffs were negligent in the matter of extinguishing a fire originating on the defendant's right of way and communicating to their land is a question of fact to be submitted to the jury under proper instructions: *Karson* v. *Milwaukee, etc., Railroad Company,* 29 Minn. 12; *Lindsay* v. *Winona, etc., Railroad Company,* 29 Minn. 411; *Pacific Railroad Company* v. *Brady,* 17 Kan. 380; *Kansas City Railroad Company* v. *Owen,* 25 Kan. 419; *Missouri Pacific Railroad Company* v. *Connell,* 30 Kan. 35; *Murphy* v. *Chicago, etc., Railroad Company,* 45 Wis. 222; *Ross* v. *Boston, etc., Railroad Company,* 6 Allen, 87; *Diamond* v.

*Northern Pacific Railroad Company,* 6 Mont. 580; *Fero*
v. *Buffalo, etc., Railroad Company,* 22 N. Y. 209; *Illinois
Central Railroad Company* v. *Frazier,* 64 Ill. 29.

Where there is evidence tending to show that the
fire originated through carelessness of the defendant
in allowing combustible material to accumulate on
the right of way, it imposes upon the defendant the
burden of proving that he had used proper precau-
tions for confining sparks and cinders: *Patterson* v.
*Chesapeake, etc., Railroad,* 26 S. E. 393; overruling *Ber-
nard* v. *Railroad Company,* 85 Va. 792. See, also, 2
Sherman and Redfield on Negligence, § 673; *West* v.
*Chicago, etc., Railway Company,* 35 N. W. 479.

For respondent there was an oral argument by
*Messrs. Joel M. Long* and *Thomas H. Crawford,* with a
brief over the names of *J. M. Long, T. H. Crawford,*
and *Cox, Cotton, Teal & Minor,* to this effect:

There being no evidence of negligence as charged
in the complaint, there was no evidence that the fire
started on the right of way. There was no evidence
that the fire started from the locomotive or engine,
while, on the contrary, the plaintiffs' evidence showed
that the engine was properly operated, and that it was
not emitting any sparks or fire. The only theory upon
which the plaintiffs can recover would be that the
train of cars passed about half an hour prior to the
time when the fire was first seen, and about five min-
utes afterward men were seen going up along or near
the track and at the point where the fire was started.
Likewise the evidence of the plaintiffs' advancing,

that this peat land was dry and fire had been known
to lay in it for two years, and was known to be on fire
from October to December, becomes a theory or con-
jecture as to how the fire started, and in such case it
is the duty of the court to direct for the defendant:
*Hines* v. *Railway*, 75 Iowa, 597; *Asback* v. *Railway*, 74
Iowa, 248; *Wheelan* v. *Railway*, 85 Iowa, 175; *Railway*
v. *State*, 73 Md. 74; *Railway* v. *State*, 71 Md. 594; *Par-
rott* v. *Wells*, 15 Wall. 524–537.

Where the plaintiffs' servant was in a position to
have prevented any damage from fire and made no
effort to do so, the plaintiff can not recover from the
defendant, even though evidence may disclose that the
fire was communicated by sparks from the engine:
*Railroad* v. *McClellan*, 42 Ill. 355; *Potter* v. *Railway*, 21
Wis. 377–382; *Railroad* v. *Pennell*, 94 Ill. 448–454;
*Railway* v. *Pindar*, 53 Ill. 447–451; *Railway* v. *Hecht*,
38 Ark. 357–370; *Stebbins* v. *Railway*, 54 Vt. 464; Whar-
ton on Negligence, (2d ed.), § 877; *Doggett* v. *Railway*,
78 N. C. 305–311; *Kellogg* v. *Railway*, 26 Wis. 223–
245–257; *Snider* v. *Railway*, 11 W. Va. 14–37–38; *Mc-
Narra* v. *Railway*, 41 Wis. 69–75; *Eaton* v. *Railway*, 19
Or. 391.

Opinion by Mr. Chief Justice Moore.

This is an action by F. L. Richmond and W. T.
Wright against E. McNeill, as receiver of the Oregon
Railway and Navigation Company, a corporation, to
recover damages for injury to land belonging to them
in Union County, Oregon, by the burning of the soil
thereof and the grass, fence posts, and wire thereon,
the destruction of which is alleged to have been caused

by the negligent operation of a railway locomotive on the line of said company, whereby sparks were emitted therefrom, which, falling upon a quantity of dry grass and other inflammable material, carelessly permitted by the defendant, his agents and servants, to accumulate on the right of way of the railway company, caused the same to ignite, and the fire kindled thereby spread to plaintiffs' adjoining premises, causing the injury of which they complain. The complaint is in the usual form, and, issue being joined thereon, at the trial the plaintiffs introduced their evidence, and rested, whereupon the court, considering that neither the plaintiffs nor their agents had exercised such a degree of care and diligence in protecting their property from the ravages of the fire as was reasonably within their power, upon motion therefor gave a judgment of nonsuit, from which the plaintiffs appeal.

The judgment complained of was evidently based upon the assumption that, although the fire which caused the injury was negligently emitted from a locomotive, and, communicating with the dry grasses and other inflammable materials which were carelessly permitted to accumulate on the right of way, spread therefrom, and burned the plaintiffs' property, yet that, by the exercise of reasonable care and diligence on their part, the injury of which they complain might have been averted. An examination of the evidence adduced by plaintiffs tends to show that on October 25, 1895, they were the owners and in the possession of six hundred and fifty acres of peat land, covered with rank grasses and tules, the soil of which was composed of combustible material, easily ignited; that

the line of the railway of the said corporation runs across this land, and that on October 25, 1895, between six and seven o'clock in the morning, a freight train going east passed over the same, and soon thereafter one S. P. Gates, an employee of the plaintiffs, who was about three quarters of a mile therefrom, discovered smoke ascending from what he supposed to be the right of way through the land in question. Gates testified that within five minutes after the train passed he saw smoke, which he watched for about ten or fifteen minutes; that he then went into the house to give the alarm of fire, where he remained about five minutes; he thereupon went to the barn to hitch up a team, which occupied about ten minutes, and, neither of the plaintiffs nor their superintendent being present, he, in company with his wife, two children, and another employee, drove to the fire, to see if they could do anything to guard the property; that it required about ten or fifteen minutes to make the journey, and upon their arrival they went along the water ditch on the premises to see that the fire did not cross it into the land lying on the opposite side, but, having no means with which to combat the fire, and believing that it would be useless to attempt it even if they were supplied therewith, they made no effort in that direction. This witness also says that he saw the section men going west that morning; that they met the freight train at plaintiffs' land, where they removed their hand-car from the track, to allow the train to pass, after which the car was replaced, and they resumed their journey. Alexander Ferguson, another witness, who lived about two miles from the scene of

the fire, saw the train pass, and, soon after passing plaintiffs' land, he saw smoke, which he thought might have been caused by section men burning railroad ties.

From this evidence, can it be said that plaintiffs' agents did not exercise that degree of care and diligence which it was possible for them to exert in protecting the property from destruction? The rule is settled in this state that if a party, by slight effort, and without danger, could have avoided the destruction of his property by fire negligently set by another, and refuses to put forth a reasonable exertion to arrest the impending injury, such failure on his part will preclude his right of recovery: *Eaton* v. *Oregon Railway & Navigation Company*, 19 Or. 391 (24 Pac. 415). In *Railroad Company* v. *McClelland*, 42 Ill. 355, the court, upon defendant's request, refused to give the following instruction: "If the son and servant of the plaintiff saw the fire in time to put it out, while it was on the right of way, before it reached the plaintiff's meadow, it was his duty to do so. And if, through his negligence in not doing so, the fire consumed the property of the plaintiff, the defendant would not be liable therefor." And, judgment having been rendered in favor of plaintiff, it was reversed on appeal, BREESE, J., in rendering the decision of the court, saying: "It was, then, a proper subject of inquiry by the jury, could the plaintiff's son and servant, by the exercise of reasonable diligence, have prevented the spread of the fire? He saw the fire in time to arrest its progress, or, at any rate, in time to make some effort to that end, but did not choose so to

do. He left the scene, and was absent nearly one hour, and on his return the fire had reached the meadow. Common prudence required he should have made some effort to prevent this, and it was negligence on his part, for which the plaintiff is answerable, that he did not. The fire in the meadow in July may be charged to the negligence of the plaintiff's son, who was in a position to have prevented it. . The court should have given this instruction to the jury, and it was error to refuse it." In the absence of the principal, it has been held that it is the duty of the agent or employee engaged with reference to the care or management of any property that is threatened with destruction by fire caused by the negligence of another to make a reasonable effort to avert the injury, and the neglect of the agent or employee in this respect is the failure of the principal: *Railway Company* v. *Hecht*, 38 Ark. 357. It would seem that the rule announced in this case is correct upon principle, but it cannot reasonably be expected that an agent or employee engaged in another branch or department of the principal's service would exert that same degree of care and protection of property over which he had no control, and in which he had but little interest, as he would over that under his immediate charge, and particularly so when the destruction of the latter class of property might mean a loss of employment. Nor can it be expected that a servant, in the absence of his master, can have the same interest, or exercise a like degree of care, in protecting from destruction property over which he has control as is to be looked for in the owner; but he must, it would seem, make some effort

in that direction: Wharton on Negligence (2d ed.), par. 877. The evidence shows that plaintiffs' superintendent, being obliged to leave the place, appointed Gates to look after it in his absence, and this would doubtless demand of him, in the protection of the property from the ravages of the fire, a degree of care commensurate with his responsibility.

Having shown that a duty devolved upon Gates by reason of his employment, we will review the evidence, together with the reasonable inferences deducible therefrom which tend to show the manner in which he discharged this legal obligation. It will be admitted that fire is a destructive agent, and, ordinarily, he who would avert the effect of its devastation of inflammable property must act promptly upon the discovery of the danger. Applying this rule, which would appear to be just and reasonable, to the acts of Gates, it will be remembered that, after discovering the smoke on what he supposed to be the right of way, he watched it for about ten or fifteen minutes before he made any effort towards preventing a spread of the fire if it were imminent. He saw the section men, when the freight train met them, at a point on the line at which the fire thereafter started; and while he does not testify that he thought the smoke was caused by a fire set by these men to burn railroad ties, Ferguson, another witness, does, although the latter was two miles from the scene of the fire, while Gates was only three-quarters of a mile distant. The jury might reasonably have inferred that Gates did not conclude that there was any danger from the fire, the smoke of which he saw; and, such a conclusion being deducible

from the fact of his observation, the reasonable period of it before he became convinced that the danger was imminent must necessarily have been a question of fact for the jury to ascertain. So, too, the time spent in giving information of the fire, hitching up a team, and making the journey is reasonable, or might be so found by a jury. At least the court could not say, as a matter of law, that the time thus consumed was unreasonable. Gates also says that his object in going to the fire was to see if anything could be done to guard the property, upon arriving at which they went along the water ditch to prevent the fire from crossing it, but that, having no means, they made no effort to; and, if they had tried, they could not have put out the fire. The failure of an owner of property to protect it from destruction by fire when it is within his power to do so with reasonable effort and without danger, thereby precluding his right of recovery for the damages resulting therefrom in case of its loss, must necessarily rest on the doctrine of contributory negligence. The danger incident to the fire, and the effort, when any has been made by the owner of the property, to prevent its destruction, are facts which it is within the sole province of the jury to determine, unless the court can say, as a matter of law, that there was no apparent danger and no reasonable effort. The editor of the American and English Encyclopedia of Law (vol. 4, p. 94, 1st ed.), announcing the rule for determining whose duty it is to measure the degree of care demanded of the owner in such cases, says: " When the facts are disputed, or more than one inference can be fairly drawn from them as to the care, or

want of care, of the plaintiff, the question of contributory negligence is for the jury; but when the facts are undisputed, and but one inference regarding the care of the plaintiff can be drawn from them, the question is one of law for the court." "Negligence, as I understand it," says COOLEY, C. J., in *Detroit, etc., Railroad Company* v. *Van Steinburg*, 17 Mich. 99, "consists in a want of that reasonable care which would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury." The learned justice and text writer elsewhere in the opinion also says: "As a general rule, it cannot be doubted that the question of negligence is a question of fact, and not of law," and cites many cases in support of this proposition. Applying these rules to the conduct of Gates on the occasion of the fire, we think it cannot be said that the only inference deducible therefrom is that he made no reasonable effort to prevent the spread of the fire, or to mitigate the threatened injury. It appears from the evidence that he went with reasonable diligence to the scene of the fire, ready and willing to do what he could, as he says, "to guard the property"; and that he passed along the water ditch several times to see that the fire did not cross it conclusively shows that he made some effort to perform his duty, the degree of which must be a question of fact peculiarly within the province of a jury to ascertain, and by their verdict to say whether his endeavor was all that could have been reasonably performed; and, such being the case, the judgment of nonsuit cannot be sustained upon that ground.

It is contended, however, by counsel for defendant, that, plaintiffs having failed to offer any evidence tending to show that the fire was set by sparks emitted from the locomotive in question, or that it was sending out sparks, cinders, or great volumes of smoke on that day, or that it or any other engine had ever done so in that vicinity, or that the track at that place was up grade, the freight train long or heavily loaded, or that the engine was working hard, or that it was faulty in construction, defective in appliances for arresting sparks, or carelessly or negligently operated, or any other facts from which an inference might be deduced that the fire which caused the injury originated from a spark or cinder emitted from the locomotive attached to the freight train, the judgment of nonsuit was properly rendered; while counsel for plaintiffs maintain that, having given evidence tending to prove that the defendant negligently permitted dry grass and other inflammable material to accumulate on the right of way, which were ignited immediately after the train passed their premises, and also that the fire which destroyed their property could not probably have originated from any other source, they have raised such an inference that the fire was caused by a spark emitted from the locomotive as to impose on the defendant the burden of proving that the engine in use on that day was properly constructed, possessed proper and modern appliances for confining sparks and cinders, and was carefully operated by skilled and prudent employees, and hence a judgment of nonsuit could not be predicated upon this ground. Reviewing the evidence offered on this branch of the subject, it

tends to show that the witness Gates first saw the freight train that morning at a point about one hundred and fifty or two hundred yards west of where the fire thereafter started; that he also saw the section men going west on a hand-car, which they removed from the track to permit the train to pass, after which they replaced the car, and resumed their journey; that just after the train passed, and while it was still in view of this witness, and within five minutes after the section men passed the point where the fire appeared, he discovered the fire; and that, in his opinion, and to the best of his knowledge, it started on the right of way. He also says that the weather was dry, that defendant had permitted dry grass to accumulate on the right of way, and that there had been no other fire in that vicinity that fall. The witness Ferguson says that from his place, which is about two miles west of where the fire started, he had a fair view of the railway track, and on that morning saw the train, which at that time of the year he generally watched pretty close; that he did not see it set any fire, and thought he was free therefrom at that time, but that in a little while after it passed he saw smoke arising at a point which appeared to him to be right at the railroad where it passes through plaintiffs' premises, and he then thought it might have been caused by men at work burning ties. The witness Van Gates, plaintiffs' superintendent, also says that defendant's employees dumped off grass and weeds about four or five feet from the ends of the ties along the railway track across the premises in question.

From this resume of the evidence applicable to the

question involved, can it be fairly said that it was sufficient to raise an inference from which the jury might reasonably find that the fire originated from a spark emitted from a locomotive attached to the freight train? "The doctrine," says SHERWOOD, J., "is now very well settled, and we think correctly, that a railroad company must keep its right of way reasonably clear of dangerous combustible matter; and if a fire occurs in consequence of a negligent failure so to do, and damages therefrom ensue to the property of another, the company will be liable therefor." *Jones* v. *Mich. Cent. R. R. Co.*, 59 Mich. 437 (26 N. W. 662); citing a long list of authorities. See, also, 8 Am. & Eng. Enc. Law (1st ed.), p. 14, in which a contributor, announcing the reason for this rule, says : " The general rule is that a railway company must keep its track and right of way clear of all such substances as are liable to be ignited by sparks or cinders from its engines. This is a duty clearly implied in the grant or charter which confers the right to use steam engines. As fire is a dangerous agent, it is but reasonable to presume that the legislature, in making the grant, annexed the implied condition that the track and right of way shall be kept in such a condition as to avoid danger from fire spreading therefrom." It might seem, from a casual examination of the language here quoted, that if a railway company permitted inflammable material to accumulate on its track and right of way, and by any means fire was communicated thereto, which, spreading to, destroyed the property of another, liability would thereby attach; but such, upon principle, cannot be the case, for

this implied condition annexed to the grant is to keep the track and right of way in such a condition as to be reasonably free from danger by fire incident to the passage of locomotives and trains. If a railroad company, not using its line of railway, were to permit dry grass or shavings to accumulate on the track and right of way, and such material should be set on fire by any means by another, it would certainly not be contended that the railroad company would be liable for any damages that might result therefrom. So, too, if the railroad track, with inflammable material allowed to accumulate thereon, were in constant use by the company in the operation of its trains, and some evil-disposed person were to apply a lighted match to such material, or if the same were struck by lightning, whereby it became ignited, and injury resulted, the railroad company would not be liable therefor. The use of steam as a motive power renders a fire in the locomotive a necessity, and it is against this agent, when so confined and used, that the company operating the engine must carefully guard; and to render it liable for negligence in this respect it must appear, either directly or by necessary inference, that the fire doing the injury complained of emanated from the receptacle in which the legislative grant permits it to be transported. "A railway company," says STAPLES, J., in *Richmond Railroad Company* v. *Medley*, 75 Va. 499 (40 Am. Rep. 734), "may be supplied with the best engines and the most approved apparatus for preventing the emission of sparks, operated by the most skillful engineers; it may do all that skill and science can suggest in the management of its locomo-

tives; and still it may be guilty of gross negligence in allowing the accumulation of dangerous combustible matter along its track, easily to be ignited by its furnaces, and thence communicated to the property of adjacent proprietors. Conceding that a railroad company is relieved of all responsibility for fires unavoidably caused by its locomotives, it does not follow that it is exempt from liability for such as are the result of its negligence or mismanagement. The removal of inflammable matter from the line of the railroad track is quite as much a means of preventing fires to adjoining lands as the employment of the most approved and best-constructed machinery." When it appears in evidence that damages have resulted from a fire caused by sparks or cinders emitted from a locomotive, a presumption of negligence in the construction and management of such engine is thereby created which it is incumbent upon the railroad company to overcome, and it may ordinarily escape responsibility by showing that the engine which was the primary cause of the injury was properly constructed, had the most approved appliances for arresting sparks and cinders, and was carefully operated by skillful and competent employees: *Koontz* v. *Oregon Railway & Navigation Company*, 20 Or. 3 (23 Pac. 820). The rule to be extracted from the Virginia case, however, would seem to be that, if the evidence conclusively shows sparks or cinders to have been emitted from a locomotive, thereby igniting inflammable material negligently permitted by the railroad company to accumulate on its track and right of way, and, spreading therefrom, to have destroyed the property of an-

other, the railroad company would be liable for the damage resulting, which it could not evade by showing that the engine distributing the fire was faultless in construction, perfect in appliances for arresting sparks, and skillfully and carefully operated: *Indiana Railway Company* v. *Overman*, 110 Ind. 539 (10 N. E. 575); *Gibbons* v. *Wisconsin Railroad Company*, 66 Wis. 161 (28 N. W. 170). Such a rule would seem just in its application, for it might reasonably be expected that sparks or cinders would be emitted from a locomotive, notwithstanding every precaution against their escape has seemingly been taken, and, when falling upon inflammable material negligently permitted by a railroad company to accumulate on its track or right of way, would thereby ignite, and the fire spreading, would destroy the property of another. In such case the secondary, perhaps, but the real, cause of the injury, would be the negligence of the company in permitting the accumulation of such material, in view of which the character of the engine, its appliances and operation must necessarily become immaterial factors in avoiding liability resulting from the destruction of property which might have been prevented by the exercise of greater care in the removal of such dangerous material.

In the case at bar the evidence tends to show that the fire started on the right of way, or at least the witness Gates so thought from his point of observation, about three quarters of a mile distant; but that it was caused by a spark or cinder emitted from the engine is inferable only from the mere fact that a train passed the point where the fire originated a few minutes be-

fore it was discovered. The evidence also tends to show that soil of the character destroyed had been known to retain fire for months after being ignited; but it also appears that there had been no fire, prior to the one in question, in this immediate vicinity that fall, so that the inference that the fire might have originated from smoldering embers is rebutted. It is generally known that sparks and cinders escape from engines and cause fires which destroy property, and, this being so, the probability of danger from this cause must necessarily be in inverse ratio to the remoteness from the railway track, in view of which we think an inference is reasonably deducible that a fire occurring immediately after the passage of a train, and discovered in combustible material negligently permitted to accumulate on the track or right of way, originated from a spark emitted from the engine, and particularly so when other evidence has been introduced tending to rebut any inferences that it might have arisen from other causes, thereby imposing upon the railroad company negligently permitting the accumulation of material which has given rise to the fire the burden of dispelling such inference by raising a counter inference that the fire could not reasonably have been started in this manner by showing that the track at that point was level, that the engine was properly constructed, possessed suitable appliances for arresting sparks and cinders, was operated by skillful, careful, and competent employees, and that it was not laboring to start the train to which it was attached or to stop it after being set in motion; thus leaving the question to the jury to ascertain the

fact from an examination and consideration of all the evidence whether or not the fire causing the injury originated from a spark or cinder emitted from the locomotive. Such a rule, it would seem upon principle, ought to be enforced, for, having been negligent in permitting the accumulation of dry grass and other inflammable material at exposed places, it is reasonable to infer from the fact that the fire was started therein that it was caused by a spark given off by the engine; and as the means of dispelling the inference is entirely in the power of the railway company, the person sustaining the injury cannot be expected to know, much less to prove, that the engine was defective in its appliances or construction, or that it was negligently operated on the occasion of the fire, in view of which, to compel him to establish these facts would, in many instances, be equivalent to a denial of justice: 1 Thompson on Negligence, 153, subdivision 3. In case, however, a fire starts beyond, or even on, the right of way, if no inflammable material is permitted to accumulate thereon, and loss of property result to another therefrom, the person sustaining the damages ought to be obliged to give evidence of such facts, in addition to the discovery of the fire soon after the passage of a train, as would tend to raise an inference that the fire was caused by carelessness, either in the construction or operation of the engine, before the railroad company should be required to rebut such inference, because it might reasonably have been expected that fires will occur as an incident to the operation of trains by steam as a motive power; but where the inflammable material negligently permitted

to accumulate on the track or right of way is ignited, and the fire is discovered soon after the passage of a train, the duty should be imposed on a railroad company, after the proof of this fact, and the introduction, if possible, of evidence tending to show that the fire could not reasonably have occurred from other causes, to rebut the inference of carelessness arising from proof of the fire, because it could not have been reasonably supposed that such material would have been allowed to accumulate. The plaintiffs in this case gave evidence tending to show that the fire did not arise from smoldering embers in the soil, and, having also shown that it probably started on the right of way, in combustible material, they made such a case as to raise an inference that it was caused by a spark emitted from the engine, to dispel which the duty was imposed upon the defendant to show that the engine was properly constructed, and carefully operated; and, this being so, the judgment of nonsuit cannot be predicated on that ground, and hence it follows that the judgment is reversed, and the cause remanded for retrial.

REVERSED.