Argued 7 May, decided 16 July, 1907.

**HAWLEY *v.* SUMPTER RAILWAY CO.**

90 Pacific 1106.

RAILROADS—LIABILITY FOR FIRES RESULTING FROM DEFECTIVE APPLIANCES OR NEGLIGENT OPERATION.

1. To charge a railroad company for injury resulting from a fire caused by sparks from a locomotive that was either improperly constructed or negligently operated, the charge must be proved as laid.

RAILROADS—FIRE FROM DEBRIS ON RIGHT OF WAY.

2. Where a claim against a railroad company is made for damages resulting from a fire originating in combustible material accumulated on the right of way, it is only necessary to show. that the fire started as claimed, and the company will be liable, though it was supplied with the best of locomotives and the most approved appliances for preventing the emission of sparks, and though the same were operated by the most skilled engineers.

RAILROADS—FIRES—EVIDENCE OF NEGLIGENCE.

3. The evidence of plaintiff makes at least a *prima facie* case of negligence on the part of the defendant railroad company in allowing combustible material to accumulate on its right of way.

SAME.

4. The evidence of plaintiff justifies an' inference that the fire in question started from sparks dropped by one of defendant's locomotives into combustible material negligently allowed to accumulate on defendant's right of 'way, and escaped therefrom to plaintiff's property, destroying it.

RAILROADS—EVIDENCE OF FIRES FROM OTHER ENGINES.

5. In actions for damages resulting from fires caused by passing engines, it may be shown that other fires were caused by locomotives of defendant at various times in the same vicinity.

RAILROADS—FIRES BY ENGINES—CONTRIBUTORY NEGLIGENCE.

6. One who is in a position to prevent any danger from fire set by sparks from a locomotive without incurring unusual danger, and who makes no effort to do so, is guilty of negligence precluding a recovery.

CONTRIBUTORY NEGLIGENCE OF SERVANT—WHEN IMPUTABLE TO MASTER.

7. An employee, engaged with reference to the care or management of any property threatened with destruction by fire set by sparks from a locomotive, must make reasonable effort to avert the injury, and the neglect of the employee is the neglect of the owner precluding a recovery.

RAILROADS—EVIDENCE OF FIRES NOT CONNECTED WITH DEFENDANT.

8. In an action against a railway company for a fire set by sparks from a locomotive, it is error to permit a witness to testify that he had seen fires along the company's right of way, unless the testimony connects the fires with the operation of the road by the company.

From Baker: SAMUEL WHITE, Judge.

Statement by MR. COMMISSIONER SLATER.

This is an action by W. R. Hawley against the Sumpter Valley Railway Co., in which plaintiff sues to recover in damages the value of a quantity of hay and a shed in which it was stored, which were destroyed by fire on August 31, 1905, on his farm. It is alleged, in effect, that about 10 o'clock in the forenoon of that day three of defendant's trains going west passed along its road, the right of way of which abutted upon plaintiff's premises, where he had his hay stored; that by reason of improperly con-

structed engines, carelessly and negligently operated .and managed by defendant's employees, flaming sparks and coals were emitted therefrom, which lodged in and ignited a quantity of grass, leaves, brush, logs and other rubbish, which defendant had carelessly allowed to accumulate on its right of way; that the fire spread from the right of way to plaintiff's hay, destroying it and his shed.   There was a general denial of the complaint, and also an affirmative defense, to the effect that defendant's engines were at that time in charge of skillful, careful and competent employees, and that the engines were properly constructed and possessed suitable appliances for arresting sparks and cinders, and that none of the engines passing plaintiff's premises that morning were overworked or oversteamed; that the fire was not caused by its engines, and did not start upon its right of way, but that it started on plaintiff's premises, and was caused by parties unknown to it, not defendant's employees; and that the fire, after having started without defendant's fault, spread to its property.   By his reply, plaintiff denies the affirmative matter in the answer.   The trial resulted in a verdict for plaintiff, upon which judgment was entered, and from which defendant appeals. There was a motion by defendant for a nonsuit at the close of plaintiff's case, as well as one for a directed verdict in its favor at the close of its case, which motions were overruled.   Assignments of error are based thereon, as well as upon exceptions to the admission .of testimony and to instructions of the court.

REVERSED.

For appellant there was a brief over the name of *John L. Rand,* with an oral argument by *Mr. Vernor Wayne Tomlinson.*

For respondent there was a brief over the names of *Hart & Smith* and *C. H. McColloch,* with an oral argument by *Mr. McColloch.*

Opinion by MR. COMMISSIONER SLATER.

No direct testimony was offered by plaintiff tending to show any defective construction or want of repair of any of defendant's engines, or of any careless or negligent operation of any of

them on the day on which his property was destroyed, nor was he able to identify any particular engine, which he claimed set the fire, further than to show by number the three particular engines which passed his premises in the forenoon of August 31, 1905, which three engines did practically all of the hauling on that part of defendant's road in the vicinity of plaintiff's farm. But it was also shown that all of defendant's engines were practically of the same construction as to fire boxes and devices for arresting sparks. The evidence on the part of plaintiff tends to show that on the morning of August 31, 1905, between the hours of 8 and 9 o'clock, there was no fire about his premises or his haystacks; that between the hours of 9:30 and 10:20 o'clock on that morning defendant ran its three trains of cars going west over its road, where the same passes over and across plaintiff's premises and adjacent to his hay shed, where he had 42 tons of loose hay and 12 tons of baled hay stored; that the distance, according to one witness, from the hay shed to the track, is from 50 to 100 yards; that defendant had allowed to accumulate and remain on its right of day, where it is claimed the fire originated, a quantity of dry grass, brush, logs and ends of ties; that all of the engines of defendant used over said road were practically of the same construction as to fire boxes and spark arresters; that defendant's roadbed for some distance before reaching the place opposite where the hay was stored when coming from the east and going west has a pretty good upgrade, and that its engines, when passing this particular place, were in the habit of emitting a quantity of flaming sparks and cinders. One witness in describing that said: "There was a large quantity, a whole trail, flying back from the smokestack," and that at least twice during the months of July and August of that year, and in the vicinity of plaintiff's premises, fires were discovered on defendant's right of way soon or immediately after the passing of trains.

There is no direct evidence in the record as to how or when the fire in question originated, but one Smith, who had been hauling wood from plaintiff's premises to the town of Sumpter,

testifies that between the hours of 12 and 1 o'clock of that day, as he came from Sumpter along the public road, and was on an eminence opposite the haystack, he saw smoke coming from an old log on defendant's right of way, and between plaintiff's haystacks and the track. One end of this log, according to his testimony, was probably partly under plaintiff's fence. Witness was about 250 yards from the track opposite the hay, but could see that no fire was then on plaintiff's land between the right of way and his haystacks, and there was no fire at the haystacks. He testifies that he afterwards put up his team and loaded his wagon again with wood, but about 3 o'clock in the afternoon of that day he went down to the place where he had seen the fire and saw that plaintiff's hay had been consumed, and he also saw the log burning from which he had observed smoke coming earlier in the day. There was a burned track 20 to 40 feet wide leading from the right of way up to the place where the shed and haystacks had been, but were then destroyed, and it appeared to this witness that the fire had traveled from the right of way to the haystacks. The fire had also extended upon and along defendant's right of way some distance to a bridge or culvert, which was burning. Alexander Stedman, another witness, also testified in plaintiff's behalf that he passed along by plaintiff's premises about 1 o'clock of that day and noticed that the right of way was afire for a distance of 150 to 200 yards up and down the track, and the fire was burning in some logs and old tie ends that had been piled upon the right of way; that the end of the haystack had just caught on fire, and quite a strip of land from the right of way to the stack had been burned over; that the fire was moving from the right of way toward the stacks. Both of these witnesses testify that at the time they were at the place the fire was burning the wind was blowing from the right of way toward the stacks.

Upon this state of the testimony defendant urges its right to a nonsuit. The gist of plaintiff's cause of action is negligence of the defendant in running upon its road engines improperly constructed, and in a careless and negligent manner, by reason

49 OR.—— 33

of which sparks of fire and flaming coals were thrown out and upon grass, rubbish and logs carelessly left and allowed to accumulate upon its right of way, setting fire thereto, which spread and destroyed plaintiff's property. The negligence here alleged is of a double nature: (1) In the use of improperly constructed engines or the careless and negligent operation of them, which caused the fire that consumed plaintiff's property; and (2) in allowing brush, rubbish and logs to accumulate and remain upon its right of way, which became ignited by sparks and coals of fire from defendant's engines.

1. In the former case, to make defendant liable, plaintiff must prove negligence on its part in using defective engines, or negligence in the operation of them, by which the fire was caused.

2. But in the latter case, it is sufficient to charge the defendant, if the evidence shows that it allowed rubbish to accumulate and remain upon its right of way, which became ignited by sparks or coals coming from its engines, although defendant may have been supplied with the best of engines, and the most approved appliances for preventing the emission of sparks, and although its engines may have been operated by the most skilled engineers. If a fire, the origin of which has been traced to defendant's engines, occurs in consequence of a negligent failure on the part of defendant to keep its right of way reasonably clear of dangerous combustible material, and damage thereby ensues to property of another, it would be liable: *Richmond* v. *McNeill*, 31 Or. 342 (49 Pac. 879).

3. The evidence in the case at bar tends to show that defendant's right of way at the time of the fire was incumbered with a considerable amount of combustible material, consisting of dry grass, brush, tie ends and logs, and that the fire when first observed was in an old log, which had evidently been there for some time, for defendant's counsel, when cross-examining plaintiff's witness, Smith, asked this question, "Don't you know that the log was afire one year before that time, and was not afire upon the 31st day of August last? Don't you know that?" To this question witness answered, "No, sir." Then immediately

thereafter counsel asked him this question: "And shown on the ground to be a fact." The form of the interrogatories would appear to be an admission on part of defendant that the log in question had been on the right of way for the past year. There was also some evidence that the fire was observed burning in the same vicinity in some old tie ends, which had evidently been piled there by defendant's employees. In this, we think, is ample evidence to make a *prima facie* case, at least, of negligence on part of the defendant in keeping its right of way reasonably free of combustible material.

4. Defendant contends, however, that there is no evidence from which an inference may be drawn that its engines started the fire in question, and evidence that the fire on the right of way was first observed between two and two and one-half hours after the passing of defendant's last train is too remote to create such an inference. It has been held by many courts that fire discovered upon the right of way soon or immediately after the passing of an engine, where it is also shown that it cannot be reasonably inferred that the fire was caused in some other manner, creates an inference that the fire was caused by sparks of fire from the passing engine, and this is the rule of this court, as stated in the case of *Richmond* v. *McNeill*, 31 Or. 342 (49 Pac. 879). At page 361 (48 Pac. p. 884) of the opinion, Mr. Chief Justice MOORE says: "Such a rule, it would seem upon principle, ought to be enforced, for, having been negligent in permitting the accumulation of dry grass and other inflammable material at exposed places, it is reasonable to infer from the fact that the fire was started therein that it was caused by a spark given off by the engine." But the fact that the smoldering fire was not observed by any one for two or two and one-half hours after the passing of defendant's last engine does not necessarily destroy that inference, when we take into consideration the surrounding circumstances shown here, that the locality is remote and the country sparsely settled in that neighborhood, and that there may have been none present to observe the beginning of the fire, and the character of the testimony given by the

witness who first saw the fire. The evidence is that witness Smith, between 12 and 1 o'clock of that day, while passing along the public highway, and on an eminence about 250 yards distant, saw smoke coming from an old log, which, by other testimony, was rotten and on fire and on the right of way. It was not the beginning or the origin of the fire that this witness observed, but smoke from a log which, under the facts shown, may have been slumbering with fire for hours before being communicated to the surrounding territory. It is quite true that the strength of the inference to be drawn from such testimony diminishes with the increase of time that the fire may be discovered after the passing of the engines, and the inference in this case may not be strong, but it is some evidence, and we think at least creates a probability that defendant's engines caused the fire.

5. Plaintiff does not, however, depend solely upon this inference to make his case. In addition he has shown by competent evidence that defendant's engines, when passing along this particular place, which has an upgrade, emitted quantities of sparks, and that other fires were discovered in July and August of that year on defendant's right of way where it crossed his premises and soon after the passing of an engine. This evidence, taken together with the inference to be drawn from the discovery of the fire on the right of way in combustible material negligently allowed to accumulate, although discovered upon the lapse of considerable time after the passing of the engine, strengthens the possibility that it was caused by the engine, and creates a reasonable probability that such was the fact. In the case of *Dunning v. Maine Cent. R. Co.* 91 Me. 87 (39 Atl. 352: 64 Am. St. Rep. 208), the court say: "We think that when the question at issue is whether, as a matter of fact, the fire was caused by any locomotive, other fires caused by defendant's locomotives at about the same time and in the same vicinity may be given in evidence for the purpose of showing the capacity of locomotive engines to set fires by the emission of sparks or the escape of coals. It is admissible as 'tending to prove the possibility, and a consequent

probability, that some locomotive caused the fire'—language from *Grand Trunk Ry. v. Richardson,* 91 U. S. 464 (23 L. Ed. 356) —which has often been cited with approval. To show a possibility is the first logical step. That other engines of the same company, under the same general management, passing over the same track at the same grade, at about the same time, and surrounded by the same physical conditions, have scattered sparks or dropped coals so as to cause fires, appeals legitimately to the mind as showing that it was possible for the engine in question to do likewise. The testimony is illustrative of the character of a locomotive, as such, with respect to the emission of sparks or the dropping of coals. If the possibility be proved, other facts and circumstances may lead to a probability and then to satisfactory proof. A simple enumeration of some of the authorities which sustain these views may be useful: *Sheldon* v. *Hudson River R. Co.* 14 N. Y. 218 (67 Am. Dec. 155) ; *Field* v. *New York Cent. R. Co.* 32 N. Y. 339; *Diamond* v. *North Pac. Ry. Co.* 6 Mont. 580 (13 Pac. 367 : 29 Am. & Eng. R. Cas. 117) ; *Piggott* v. *Ea.* 3 M. G. & S. 229; *Koontz* v. *Oregon Ry. & Nav. Co.* 20 Or. 3 (23 Pac. 820 : 43 Am. & Eng. R. Cas. 11) ; *Chicago, St. P., M. & O. Ry. Co.* v. *Gilbert,* 52 Fed. 711 (3 C. C. A. 264) ; *Campbell* v. *Missouri Pac. Ry. Co.* 121 Mo. 340 (25 S. W. 936 : 25 L. R. A. 175 : 42 Am. St. Rep. 530) ; *Smith* v. *Old Colony, etc., R. Co.* 10 R. I. 22 ; *Annapolis, etc., R. Co.* v. *Gantt,* 39 Md. 124 ; 1 Thompson, Negligence, 163."

6. It is also urged by defendant that the testimony of plaintiff shows that he failed to exercise the proper degree of care and diligence to protect his property from the fire in question after its origin, if it did originate on the right of way of defendant. This contention is based on the claim that the testimony shows that witness Paul Amel, as plaintiff's lessee, was directly in possession of the field in which the fire occurred, and that Amel's hired man was there on the premises during the whole time in which it was claimed the fire was set and destroyed the hay. Amel, on cross-examination, however, swears he was not in charge of the ranch, but was milking some cows there;

that he left the premises in the morning at about 6 o'clock and did not return until between 3 and 5 o'clock in the afternoon of the same day; that he left his hired man, Roy Nordyke, on the place, but he does not pretend to know where Nordyke was during the day, nor what Nordyke saw or did that day. If the plaintiff was in a position to have prevented any damage from fire to his property without incurring unusual danger, but made no effort to do so, it was negligence on his part, and precluded his right of recovery: *Eaton* v. *Oregon Ry. & Nav. Co.* 19 Or. 391 (24 Pac. 415).

7. And in the absence of the principal, it is the duty of the agent or employee, engaged with reference to the care or management of any property that is threatened with destruction by fire caused by neglect of another, to make reasonable effort to avert the injury and the neglect of the agent or employee in this respect is the failure of the principal: *Railway Co.* v. *Hecht,* 38 Ark. 357, cited with approval in *Richmond* v. *McNeill,* 31 Or. at p. 350 (49 Pac. p. 881). But in the case at bar the evidence referred to is not sufficient, in our opinion, to show that either Amel or Nordyke was charged with any duty in reference to the care or custody of this property, as the agent or employee of the plaintiff, nor does it show that either of them, if such duty was shown to have devolved upon him, was in a position to have averted the injury. Amel was away from the farm during most of the day and while the fire occurred, and where Nordyke was is not shown; at least it is not shown that he saw the fire in time to have arrested it with reasonable effort and without danger to himself. Jesse Smith, another witness for plaintiff, who between 1 and 12 o'clock of that day first saw smoke coming from the log on the right of way, was at the time engaged as plaintiff's employee in hauling wood from plaintiff's premises, but his employment evidently had no reference to the care and management of plaintiff's meadow land or hay, and so far as the evidence discloses no duty rested on him to leave his special employment, care and duty to look after the general welfare of plaintiff's property. For these reasons the court properly over-

ruled the motion for nonsuit by the defendant, and for substantially the same reasons the court was bound to overrule defendant's motion for a directed verdict.  Upon this latter assignment of error counsel for defendant urges that evidence was offered by it tending to show that its engines were in proper condition, and skillfully handled, and that it had thereby rebutted the inference of negligence deducible from plaintiff's case.  However this may be, the record does not contain any of defendant's evidence, and if it did, it would not, in our opinion, be a sufficient answer to plaintiff's case as we have considered it.

8.  But we find it necessary to reverse this case and remand it for a new trial for error committed by the court in admitting incompetent testimony.  Witness Graves was permitted to testify over defendant's objection that he had seen other fires on defendant's right of way in the month of July, and a short distance above plaintiff's premises, but he failed to state any other circumstances tending to connect the origin of the fire with defendant's engines; and likewise J. L. Yantis was permitted to testify over defendant's objections that he had seen a number of fires along defendant's right of way near his farm, which is about four miles from plaintiff's farm, but no other facts or circumstances were given by him when testifying tending to show how any of these fires originated, or that defendant was in any way responsible for them.  Evidence of other fires upon defendant's right of way is admissible to strengthen the inference that the fire in question originated from the cause alleged, only when it is shown in connection therewith that at or about the time of the occurence the defendant's locomotives threw sparks and kindled fires upon that part of its highway where the fire complained of occurred; or that an engine had passed soon or just previous to the origin of the fire, or some other fact tending in some degree to connect the occurrence of the fire with the operation of the road by defendant: 1 Jones, Evidence, §§ 163, 164; *Koontz v. Oregon Ry. & Nav. Co.* 20 Or. 3 (23 Pac. 820) ; *Richmond v. McNeill,* 31 Or. 342 (49 Pac. 879) ; *Norwich Ins. Co. v. Oregon Railroad Co.* 46 Or. 123 (78 Pac. 1025) ; *Manchester*

*Assur. Co.* v. *Oregon Railroad Co.* 46 Or. 162 (79 Pac. 60: 69 L. R. A. 475).

The plaintiff having failed to offer in connection with the testimony of these two witnesses, to which objection was made, any testimony tending to connect, either directly or remotely, any of the fires mentioned by them with the operation of the road by defendant, such testimony was not admissible. Under these circumstances it will not be necessary to examine any other of the assigned errors, as they will no doubt be eliminated upon a retrial.

The judgment should be reversed, and the cause remanded for a new trial.            REVERSED.