Decided 27 June, 1904.

## ANDERSON v. OREGON RAILROAD CO.

[77 Pac. 119.]

RAILROADS — DUTY TO PREVENT ESCAPE OF SPARKS AND FIRE.

1. It is the duty of a railroad company to use reasonable care to procure the most approved appliances in practical use to prevent the escape of fire from its engines; and when such care has been used in endeavoring to obtain such appliances, the duty has been performed.

INSTRUCTIONS — ESTOPPEL TO OBJECT.

2. A party cannot be heard to object to an instruction that he has himself suggested.

INSTRUCTIONS ON ABSTRACT PROPOSITIONS.

3. When there is no evidence of certain facts, an instruction that if the jury find such facts to exist they may draw certain inferences therefrom is abstract and misleading, constituting reversible error.

RAILROADS — FIRES — PRESUMPTION OF NEGLIGENCE.*

4. In an action for damages caused by a fire started by locomotive sparks, a *prima facie* case is made by showing that the fire started through sparks thrown out by a passing engine and communicated to plaintiff's property, resulting in its injury.

COMPETENT EVIDENCE IN SUCH CASES.

5. In an action for damages by fire set out by a railroad locomotive, evidence that sparks escaped from the engines in large showers, or that sparks of unusual size were emitted and carried to a great height, or that an unusual volume was emitted, is admissible, though not necessary to showing a cause of action.

INSTRUCTIONS IN THEIR RELATION TO THE EVIDENCE.

6. Instructions as to disputed facts are always to be considered and construed in connection with the testimony, and the words used may not always have just the same meaning: for instance, the word "point" as used in the instruction here considered does not mean the exact spot where the fire occurred, but rather means along that part of the road.

CONSTRUING CONTRADICTORY EVIDENCE.

7. Where the testimony is conflicting the question in dispute should be left to the jury.

INSTRUCTION COVERED BY GENERAL CHARGE.

8. Requested instructions substantially covered by the charge already given may properly be refused.

From Umatilla: WILLIAM R. ELLIS, Judge.

Louis Anderson seeks by this action to recover from the Oregon Railroad and Navigation Company damages for loss of wheat by fire while in storage in a warehouse at Cayuse Station, in Umatilla County, which it is alleged was caused by the negligence of defendant in the operation of a train of cars. The negligence stated, in brief, is that the engines of defendant were unskillfully and improperly constructed, and improperly, carelessly, and negligently managed and overloaded, by reason whereof large quantities of sparks, burning cinders, and coals were emitted and ejected from such engines while passing in the vicinity, and were thrown upon said warehouse and other buildings in proximity thereto, which ignited and set them on fire, whereby they, together with their contents, were destroyed. The defendant is the appellant here.                                        AFFIRMED.

For appellant there was an oral argument by *Mr. Henry F. Conner*, with a brief over the names of *William W. Cotton*, *H. F. Conner*, and *Carter & Raley* to this effect.

I. A railroad company is liable for fires set out by its locomotives only in cases where the result has been brought about through the negligence of the company: *Koontz* v. *Oregon Ry. & Nav. Co.* 20 Or. 1 (23 Pac. 820); *Lesser Cot-*

NOTE.— As to Presumption of Negligence from Occurrence of Railway Fire, see 15 L. R. A. 40 and 42 Am. St. Rep. 538.— REPORTER.

*ton Co.* v. *St. Louis, I. M. & S. Ry. Co.* 114 Fed. 133 ; *Read* v. *Morse,* 34 Wis. 314; *Jackson* v. *Chicago & N. W. Ry. Co.* 31 Iowa, 76 (7 Am. Rep. 120) ; *Missouri, K. & T. Ry. Co.* v. *Mitchell* (Tex. Civ. App.), 79 S. W. 94.

II. A railroad company is not bound to use the best or most approved appliances to prevent the escape of fire. An instruction to that effect imposes a higher duty upon a railroad than is required : *Gagg* v. *Vetter,* 41 Ind. 228, 245 (13 Am. Rep. 322) ; *Spaulding* v. *Chicago & N. W. Ry. Co.* 30 Wis. 110, 121 (11 Am. Rep. 550) ; *Read* v. *Morse,* 34 Wis. 314; *Menominee* v. *Milwaukee,* 91 Wis. 447 (65 N. W. 176) ; *Lesser Cotton Co.* v. *St. Louis, I. M. & S. Ry. Co.* 114 Fed. 133, 141 ; *Flinn* v. *New York Cent. R. Co.* 142 N. Y. 11 (36 N. E. 104) ; *Frace* v. *New York, L. E. & W. R. Co.* 143 N. Y. 182 (38 N. E. 102) ; *Hoyt* v. *Jeffers,* 30 Mich. 181 ; *Hogan* v. *Railroad Co.* 86 Mich. 615 (49 N. W. 509) ; *Hoff* v. *West Jersey R.* 45 N. J. L. 201 ; *T. P. & W. R. Co.* v. *Pindar,* 53 Ill. 447, 450 (5 Am. Rep. 57) ; *T. W. & W. R. Co.* v. *Corn,* 71 Ill. 493, 496 ; *Pittsburg* v. *Nelson,* 51 Ind. 150, 154; *Missouri, K. & T. Ry. Co.* v. *Mitchell,* (Tex. Civ. App.), 79 S. W. 94; 2 Shear. & R., Negligence, § 673.

III. An abstract instruction submitting to the jury a question regarding which there is no evidence is reversible error: *Breon* v. *Henkle,* 14 Or. 494, 507 (13 Pac. 289); *Roberts* v. *Parrish,* 17 Or. 583 (22 Pac. 136); *Woodward* v. *Oregon Ry. & Nav. Co.* 18 Or. 289, 299 (22 Pac. 1076); *Illinois Cent. R. Co.* v. *Davidson,* 64 Fed. 301, 305; *First Nat. Bank* v. *Hanover Nat. Bank,* 66 Fed. 34; *Wells* v. *Houston,* 23 Tex. Civ. App. 629, 646 (57 S. W. 584); *City Council* v. *Owens,* 111 Ga. 464, 480 (36 S. E. 830); *Fisher* v. *Central Lead Co.* 156 Mo. 479 (56 S. W. 1107).

IV. Where no standard is fixed, by reference to which the jury can consider the evidence, it is error to submit to the jury the question whether the facts which the evi-

dence tends to prove were a usual or unusual condition of things: *Flinn* v. *New York Cent. & H. R. R. Co.* 142 N. Y. 11, 19 (36 N. E. 1046); *Peck* v. *New York Cent. & H. R. R. Co.* 165 N. Y. 347 (59 N. E. 206); Century Dic. "Unusual."

V. And where the amount of sparks emitted are shown to be usual, without more, the inference is that their emission is inevitable and a consequence of the usual operation of the road: *Rosen* v. *Chicago,* 83 Fed. 300; *Flinn* v. *New York Cent. & H. R. R. Co.* 142 N. Y. 11, 19 (36 N. E. 1046).

For respondent there was a brief over the names of *Hailey & Lowell* and *Robert J. Slater,* with an oral argument by *Mr. Stephen A. Lowell.*

MR. JUSTICE WOLVERTON, after stating the facts in the above terms, delivered the opinion of the court.

1. The first assignment of error relates to the first clause of paragraph No. 4 of the court's charge to the jury, which is as follows:

"I instruct you that a railroad company is bound to use the best or most approved appliances for the purpose of preventing sparks or fire from escaping from its engines and being communicated to property of others rightfully lying upon or along the right of way."

The objection to this instruction proceeds upon the idea that the company was not absolutely bound to provide its engines with the most approved appliances for preventing the escape of sparks and cinders, but only to exercise reasonable care and diligence in supplying and annexing such appliances. The general rule seems to be that the company must adopt the most approved mechanical inventions and appliances to prevent the escape of fire, but that, when it has exercised reasonable diligence and precaution in obtaining and putting them into prac-

tical use, it has discharged its duty to those who are subject to the dangers incident to the escape of fire. If the company has in good faith sought to procure the best appliances, and has exercised reasonable care and diligence in obtaining them, and if, under all attending and surrounding circumstances, it has acted in the premises as a reasonable, prudent, and cautious person, having due regard to the rights of others, would have acted, then it has discharged its whole duty, and would not incur liability for damages arising from the escape of fire. The basis of the action is negligence, consisting in the want of the exercise of due care in providing the most approved appliances in known practical use. "The true rule is," says Judge SANBORN, with commendable perspicuity, "that, where the defendant has exercised reasonable care to provide the most effective machinery in known practical use to prevent the burning of private property, it has fully discharged its duty in that regard ": Lesser Cotton Co. v. St. Louis, I. M. & S. Ry. Co. 114 Fed. 133, 141 (52 C. C. A. 95). See, also, 13 Am. & Eng. Enc. Law (2 ed.) 473; Pierce, Railroads, 433; 2 Thompson, Comm. Law. Neg. § 2253; Gulf, Colo. & S. F. Ry. Co. v. Reagan, (Tex. Civ. App.) 32 S. W. 847; Missouri, K. & T. Ry. Co. v. Mitchell, (Tex. Civ. App.) 79 S. W. 94; Flinn v. New York Cent. & H. R. R. Co. 142 N. Y. 11 (36 N. E. 1046); Railroad Co. v. Nelson, 51 Ind. 150; Hoyt v. Jeffers, 30 Mich. 181. This instruction, therefore, states the law in the abstract, but, as applied in practice, the railroad company discharges its whole duty when it uses reasonable care and diligence in supplying and putting into practical use such most approved appliances.

The court, however, gave another instruction at the request of the defendant, which counsel for plaintiff claims cures the evil, if one exists. It is No. 12, and reads as follows:

"The duty to use reasonable care is performed when the company has equipped its engines with the most approved and best known spark-arresting appliances which are approved by the best practice of modern railroad managers, when it uses reasonable care to keep them in such a condition as to properly perform their functions, when it places its locomotives in charge of competent and skillful engineers, and when its locomotives are operated so as not to unnecessarily scatter fire."

The two instructions read together tell the jury, in effect, that the company is not liable unless the fire is communicated through its negligence, and that the duty to use reasonable care is performed when the company has equipped its engines with the most approved and best known spark-arresting appliances which are approved by the best practice of modern railroad managers, and when it uses reasonable care to keep them in a condition to perform their functions properly. But these do not eradicate the vice. It defines the reasonable care required to be the actual adoption of the most approved and best known spark-arresters and appliances, whereas the care and diligence required under the rule is in procuring such most approved appliances. Of course, the duty to exercise reasonable care is discharged when the appliances have been adopted and furnished, but it is also discharged when the company has exercised reasonable care and skill in its endeavor to furnish such appliances. The instructions are manifestly inaccurate in their statement of the law.

2. But the defendant asked and procured to be given still another instruction, incorporating precisely the same idea as the first paragraph of No. 4. We allude to instruction No. 14, which reads:

"I instruct you that, if you find that the wheat described in the complaint was burned by a fire communicated from the locomotive of the defendant, you must

nevertheless find for the defendant, unless you further find either that the defendant has failed to use the best and most approved appliances to prevent the unnecessary escape of fire from its locomotives, or unless the engines were overloaded," etc.

It is thus apparent that, whatever error there appears to be in the statement of the law, the defendant was actively instrumental in bringing it about, hence it cannot be heard to complain, and the case ought not to be reversed because of it.

3. The second and third assignments of error, which may be considered together, relate to the latter paragraph of instruction 4, and to instruction 5. The latter part of instruction 4 reads as follows:

"And if it is proved that an engine, at a particular time, threw an unusual quantity of sparks or coals of fire, you may consider that fact as to whether or not the engine, at such particular time, was either not in good order, or not properly constructed, or not skillfully and carefully managed, or otherwise."

The fifth instruction reads:

" I instruct you that it is the duty of the railroad company to see to it that its engines and trains are skillfully and carefully managed. And in this connection I instruct you that if you should find from the evidence that there was a heavy grade at the point where the alleged fire occurred, and that a train passing said point just prior to the discovery of the fire was so heavily loaded as to require the engines to be worked hard, and to cause them to emit an unusual quantity of sparks, these are circumstances which you have a right to consider in determining whether or not the engines attached to said train were skillfully and carefully managed."

The bill of exceptions shows that the following is all the testimony offered or received at the trial relating to the amount of sparks or coals of fire emitted from the locomotive or locomotives which it is claimed communi-

cated the fire to the buildings. Martin Madison, being called as a witness, testified on direct examination: "The train which was east bound passed Cayuse Station soon after noon on the 30th day of March, 1903. After doing some switching, the train backed up to the west end of the station yard, and, after stopping there from two to five minutes, went east past the warehouse which was burned, and then took a run for the hill which is east of Cayuse Station. When they passed the warehouse the front engine was all right, but this back engine, the little one, was doing its best. That is a common occurrence. They all do that. It is a heavy grade east of the station, and the engines have to work hard. The hind engine threw a little fire. It worked all it could when it passed the warehouse. I do not know anything about the grade opposite the warehouse, but I do know that the engines have to work pretty hard to get up the grade east of the station." And on cross-examination: "Q. You say the head engine was all right? A. Yes, it went all right, to my notion. The hind engine threw a little fire. It worked all it could."

Mrs. Sarah Strahn testified: "I was cooking for the section boss at Cayuse on March 30, 1903. I was seated in the section house (referring to Exhibit A). I saw the train come in. I do not know how large the train was. I know it was a heavy, loaded train, but do not know the number of cars. It was switching there. I heard the engine puffing and sending the heavy cinders through the heavy smoke. I always sit there and watch the cinders as the train is backing in and out. These cinders are scattered all over the track. I saw the cinders and heavy puffing when the train was pulling out, and cinders going through the smoke. I saw a good deal of smoke coming out of the rear engine that did the switching. It was dark blue or black, and I saw some cinders. The engine was

puffing quite hard when it went by, but there was nothing unusual in that, not for that place, because they always do that. I saw cinders coming out of the engine when it was switching. I did not count them." Questioned by defendant's counsel: "Were there a very large number? A. Only as they usually come out. Q. There was nothing unusual about that place? A. No, sir." And Jeremiah Galvin: "Q. You saw black smoke come out of the engine? A. There was black smoke sweeping over the warehouse. It was from the engine." And, continuing: "Was at Cayuse Station on March 30, 1903. Was there at the time of the fire. I noticed, as I drove up to the warehouse, there was a train standing on the track close to the warehouse, down the track from the warehouse, and I noticed a train near the bridge soon after I got in the warehouse; that train pulled up and passed, I noticed also. I concluded it was a very heavy train from the way the engine exhausted. I had a team tied at the back part of the warehouse, so I stepped out at the time and noticed that the engines were working very hard." And on cross-examination: "I was on the north side of the warehouse, looking after my team. The warehouse was between me and the train. There was a black smoke sweeping over the warehouse. I presume it was from the engine. It was pretty black. I think the engine on the rear end of the train was the heaviest smoke. The train was moving slow." The bill of exceptions also certifies that there was no evidence offered during the course of the trial tending to prove that there was a heavy grade at the point where the alleged fire occurred.

The objection to these instructions is that they are misleading and abstract, because it is insisted there was no evidence introduced tending to show that there was a heavy grade at the point where the alleged fire occurred, or that defendant's engines emitted an unusual quantity of

sparks  If, as a matter of fact, there was no evidence in the case tending to prove these conditions, the mere statement of the court to the jury that, if they found them to exist, they could draw certain inferences therefrom, is the assumption of a fact in evidence contrary to the truth, making the instruction both misleading and abstract: misleading, because it submits to the jury a matter as if there were evidence to support it; and abstract, because in reality there is no question of the kind in the case, and it would constitute error: *Breon* v. *Henkle*, 14 Or. 494 (13 Pac. 289); *Woodward* v. *Oregon Ry. & Nav. Co.* 18 Or. 289 (22 Pac. 1076).

4. It may be further premised that railroad companies engaged in a lawful business, although they employ a dangerous element to generate the propelling force of their engines, can only be held accountable for loss or damage occurring to others by the communication of fire to their property because of the want of proper care and precaution, or, in other words, through their negligence in allowing it to escape. When, therefore, damages are sought to be recovered of the companies for the destruction of property by fire, the gist of the action is negligence, which must be sustained by proof, and they can not be held accountable for unavoidable or unusual consequences of the proper operation of the enterprise, that is, of their locomotives and trains: *Flinn* v. *New York Cent. & H. R. R. Co.* 142 N. Y. 11 (36 N. E. 1046); *Peck* v. *New York Cent. & H. R. R. Co.* 165 N. Y. 347 (59 N. E. 206); *Rosen* v. *Chicago, Gt. West. R. Co.* 83 Fed. 300 (27 C. C. A. 534); *Railroad Co.* v. *Pindar*, 53 Ill. 447 (5 Am. Rep. 57). It is sufficient to establish a *prima facie* case, however, for the plaintiff to show that fire has been communicated from an engine of the railroad company to his property, resulting in the damage or destruction thereof. Such proof raises a presumption of negligence

in the construction or management of the engine, and casts upon the defendant the burden of rebutting it. Such is said to be the uniform holding of the courts of England and of many of the states of the Union, and is now the established doctrine of this court: *Koontz* v. *Oregon Ry. & Nav. Co.* 20 Or. 3 (23 Pac. 820); *Richmond* v. *McNeill*, 31 Or. 342, 358 (49 Pac. 879, 3 Am. N. Y. Rep. 707); *Spaulding* v. *Chicago & N. W. Ry. Co.* 30 Wis. 110 (11 Am. Rep. 550); *Railroad Co.* v. *Westover*, 4 Neb. 268; *Railroad Co.* v. *Mills*, 42 Ill. 407.

5. Although the plaintiff may thus make out a *prima facie* case, it is pertinent and perfectly competent for it to produce other proofs, showing negligence, that may have a tendency in that direction. Thus, it may show that sparks were observed to escape from the engine in large showers, or in large and unusual size, or were carried to a great height and far away, or in unusual volume or quantities, from which the inference may be deduced that the engine was not provided with the proper spark-arresters, or was out of repair, or was carelessly or negligently managed; such manifestations not being the probable result of the ordinary working of an engine in good order and skillfully managed: *Louisville & N. R. Co.* v. *Taylor*, 92 Ky. 55 (17 S. W. 198); *Townsend* v. *Langles*, (C. C.) 41 Fed. 919; *Johnson* v. *Chicago, M. & St. P. Ry. Co.* 31 Minn. 57 (16 N. W. 488); *Henry* v. *Southern Pac. R. Co.* 50 Cal. 176.

6. The trial court in giving the instructions complained of had in mind, no doubt, some conditions of the kind, and the question recurs, was there evidence having a tendency to their support? The court has certified that there was no evidence tending to prove that there was a heavy grade at the point where the alleged fire occurred. It is not to the purpose that there was not a heavy grade at the exact point, that is, immediately opposite. The

evidence does tend to show that there was a hill or heavy grade east of the station, for Madison testified that the train went east, past the warehouse, and then took a run for the hill, which is east of the station; that it is a heavy grade; that the first engine was all right, but that the back engine, the little one, was doing its best; that it worked all it could when it passed the warehouse. From this testimony the very natural inference would be that the grade was just east of the station, and that the train had begun to ascend before its entire length had passed, as the hind engine was seen to be doing its best when it passed the station. It would be quite technical to construe the words "at the point" to mean at the very or exact point, when the grade was in such proximity that the train had begun its ascent before it had cleared the warehouse, and to require some tendency of proof upon that construction, when for all practical purposes, as it relates to the case in hand, the grade was at the station, not opposite, we should think, but at the station or point where the fire occurred, its foot resting at the station, or so near it that its effect was fully produced upon the rear engine before or as it was passing the station. In this view there was evidence to support this feature of the instruction.

7. As to the other objection, that there was no evidence tending to show that the engines were ejecting unusual quantites of sparks, the instruction must again receive a reasonable interpretation in connection with the facts of the case as developed. By a reference to the testimony of the three witnesses called upon the subject in hand, it will be observed that one of them testified that the little or hind engine was doing its best, was being worked all it could, when it passed the warehouse, and that it threw a little fire; another, that she heard the engine puffing and sending the heavy cinders through the heavy smoke, that she saw the cinders going through the smoke, and they

were scattered all over the track; and the other, that he concluded the train was very heavy from the way the engine exhausted, that the engines were working very hard, and that he saw black smoke ("it was pretty black") sweeping over the warehouse, and "the train was moving very slow." Within the cases last above cited, this evidence was of a nature competent to go to the jury, from which they could rightfully infer that the engines were either not in good order or were not skillfully and carefully managed. It is very apparent, if the testimony is to be believed, that the hind engine was working very hard, doing its best, and that a large volume of smoke and quantities of heavy cinders were emitted therefrom, so much so that the cinders were scattered all over the track. That it ejected an unusual quantity of sparks or coals of fire may be fairly inferred when viewed in the light of the ordinary workings of the train under similar conditions. True, one of the witnesses said there was nothing unusual about the puffing of the engines, or the cinders coming out of the little one at that place, yet this did not preclude the effect of the entire testimony that there were large quantities of heavy cinders ejected, and, while the expression of the court may have been somewhat inapt, yet we cannot think that the jury were misled by it or induced to take a wrong view of the situation. Indeed, they could not have been misled, considering the reasonable intendment of the instructions, which were manifestly germane to the subject-matter of the controversy.

This leaves for our consideration the fourth and fifth assignments of error. The fourth relates to the interpolation of the phrase "and did so do" in an instruction asked by the defendant before giving it. By a grammatical construction of the latter instruction, however, the language complained of does not change its meaning in a

material sense, serving only as reiteration of the preceding expression.

8. The fifth relates to an instruction requested but not given. This was, for all practical purposes, covered by instruction 12 of the general charge, hence there was no error in refusing it.

The judgment of the trial court will be affirmed, and it is so ordered.                                        AFFIRMED.