Argued October 16, affirmed November 24, 1914.

# LA SALLE v. CENTRAL R. R. OF OREGON.*

### (144 Pac. 414.)

**Railroads—Fires—Evidence—Dead Coals.**

1. In an action for fire set by sparks from defendant's locomotive, evidence of the finding of dead coals along the railroad track in the neighborhood of the fire, in connection with testimony that the locomotive claimed to have caused the fire was emitting sparks and that the fire occurred shortly after passing of that engine, is admissible.

> [As to liability of railroad companies for fires when caused by sparks or coals from locomotives, see notes in 38 Am. Dec. 70; 78 Am. Dec. 185; 6 Am. Rep. 597.]

**Railroads—Fire—Evidence—Other Fires.**

2. In an action for fire set by sparks from defendant's locomotive, evidence of other fires at about the time of the fire in question is admissible to show want of reasonable care.

**Railroads—Fires—Assumption of Risk.**

3. Land owners adjoining and adjacent to the railroad do not assume the risk of fires caused by the railroad company's negligence.

**Trial—Instructions—Grounds—Cure by Other Instructions.**

4. In an action for fire set by sparks from defendant's locomotive, an instruction that property owners adjoining a railroad right of way assume the risk of injuries unavoidably produced by fires started without negligence is sufficiently covered by a general instruction placing the burden of proof on plaintiff to show that the fire was caused by the negligence of defendant.

**Trial—Instructions—Cure by Other Instructions.**

5. In an action for fire set by defendant's locomotive, an instruction that it is the duty of the railroad to adopt the most approved appliances is cured by other instructions making it the duty of the railroad to use reasonable diligence in procuring the most improved appliances, etc.

From Union: John W. Knowles, Judge.

This is an action by Jerome T. La Salle, S. A. La Salle, George M. Payne, German-American Insurance

---

*As to the admissibility of evidence of other fires in an action for fire set by locomotive, see note in 32 L. R. A. (N. S.) 1146.

Upon the duty of the owner of property adjoining a railroad right of way to protect it from fires set out by passing locomotive, see notes in 12 L. R. A. (N. S.) 526 and 49 L. R. A. (N. S.) 166.

REPORTER.

Company of New York, a corporation, and Fire Association of Philadelphia, a corporation, against the Central Railroad of Oregon. From a judgment in favor of plaintiffs, defendant appeals. The facts are set forth in the opinion of the court.        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Cochran & Eberhard* and *Mr. Lewis Z. Terrall,* with an oral argument by *Mr. George T. Cochran.*

For respondents there was a brief over the names of *Messrs. Veazie, McCourt & Veazie* and *Messrs. Crawford & Eakin,* with an oral argument by *Mr. John McCourt.*

In Banc.    MR. JUSTICE McNARY delivered the opinion of the court.

This is an action to recover damages for negligently setting fire to and burning a fruit-dryer belonging to the individual plaintiffs. The insurance companies indemnified the owners for the loss of the property and were thereby subrogated to the rights of the insured. The jury awarded the active plaintiffs a verdict for $4,078. Judgment followed; consequently this appeal.

Stripped of all, save its very essence, the complaint declares that defendant carelessly and negligently failed to equip the engine which passed over its track on April 11, 1913, at 11:45 A. M., with a spark-arrester, or apparatus calculated to prevent the escape of sparks, cinders, coals and fire, and by reason of such omission the engine did emit large quantities of sparks, fire and burning cinders, which were deposited upon the fruit-dryer, resulting in its complete destruction, to the damage of the owners in the sum of $6,845.50.

Defendant met the charge by an answer containing a general denial.

By the evidence, it is established that the fire started on the roof of the fruit-dryer a few minutes after a train operated by the railroad company had passed; that the fruit-dryer is located about 70 feet north of the railroad track; that at the time the engine and train passed the dryer a healthy south wind was blowing in the direction of the building; and that several other fires were started about the same time in the vicinity of the dryer. Also, it was shown that the defendant company did not make a practice of inspecting the spark-arrester on the engine, and that the last inspection was made about two months before the fire. Evidence was offered conducing to show that the spark-arrester was imperfectly attached to the plate in the boiler head, and that there was an aperture therein through which sparks might have been discharged.

1. At the trial the court permitted witnesses to testify that they had discovered dead coals north of and upon the railroad track, and in the neighborhood of the dryer. The defendant objected to the admissibility of this testimony on the ground that it was "incompetent, irrelevant and immaterial"; the particular objection to the testimony being that the evidence did not show any connection between the sparks that were emitted by the engine and the dead coals found by the witnesses. The testimony on that point ran about as follows:

"That the witnesses did not see the sparks in the light of day, but did observe by night the emission of sparks in unusual quantities and of unusual size."

The witnesses further testified that they were unable to identify the dead coals as those having been thrown

off by the engine.    Upon this phase of the case the following evidence is a fair example:

"Q. Well, tell the jury what you saw.

"A. I saw it [the engine] throwing some fire and sparks during the night and didn't usually see it in the night because I am not there much.    I saw it passing by and considerable fire and sparks—light coals—coming from the smokestack.

"Q. Now, did you ever observe any of these cinders or coals that had been thrown out from the engine after they had struck the ground, after they had died or before they had died?

"A. Well, I saw coals, dead, scattered along the ground.

"Q. Tell the jury about the size of them.

"A. Well, I saw them, not very large, but I have saw them as large, I suppose, as the end of my finger.    I saw them as large lying along the track there."

On cross-examination the witness testified:

"Q. Now, these dead coals that you saw, did you see them come from the engine?

"A. No, sir.

"Q. You do not know where they came from, of your own knowledge.

"A. No, sir."

Counsel for the defendant vigorously contend that the answers returned on cross-examination clearly indicate a want of relationship between the emitted sparks and the dead ones found close by the dryer. While it will be observed from the testimony that the witness did not know from whence the dead coals or cinders came, yet his testimony proceeds upon the theory that they were such in character as are ejected by a railroad engine, that live sparks were seen to issue from the engine, and that spent cinders were found along the railroad track.    As a rule of evidence, we have no doubt that it was competent for the witness

to give testimony regarding the discovery of the dead coals, in view of their physical characteristics bearing so close a connection to the kind of engine operated by defendant, and their close proximity to the railroad and the consumed dryer.    To make the admissibility of testimony concerning dead coals dependent upon the witness following their flight from engine to resting-place would be requiring in most instances an impossibility with the resultant effect of withholding from the jury a circumstance which it has a right to consider.    The discovery of cinders or fire-extinct coals lends strength to the possibility that the spark-arrester was defective, and this, accompanied by the other established facts that sparks were seen to escape from the engine and that the fire occurred shortly after the passing of the engine and train of cars, leads to the probability that the cause of the fire was attributable to those negligent acts with which defendant is charged. We think the admission of this testimony was not erroneous.

2. Another assignment of error is predicated upon the court's action in passing to the jury testimony of other fires occurring near the time and place of the destruction of the fruit-dryer.    The testimony giving rise to the objection was recounted by a former employee of the defendant who served in the capacity of fireman.    He testified that, "just a while" before the fire in question, other fires were set by the defendant's engine in a field about one mile from the dryer.    The witness also stated that the spark-arrester was in a similar condition when the two fires occurred.    Experience has forged the lesson that negligence of a railroad company can seldom be proved by plaintiff, except by circumstances, and that some reliance must be had upon the inference which can be collected from the fact

that other fires had occurred under similar conditions. The theory upon which the admissibility of this evidence is founded is to enable the jury to determine whether, in view of previous fires having been communicated, the company was, at the time of the fire under consideration, in the exercise of reasonable care. Testimony of this character has been sanctioned by this court in the cases of *Chenowith* v. *Southern Pac. Co.*, 53 Or. 111 (99 Pac. 86); *Richmond* v. *McNeill*, 31 Or. 342 (49 Pac. 879); *Hawley* v. *Sumpter Ry. Co.*, 49 Or. 509 (90 Pac. 1106, 12 L. R. A. (N. S.) 526); *Taffe* v. *Oregon R. & N. Co.*, 60 Or. 177 (117 Pac. 989); Thompson, Commentaries on the Law of Negligence, Vol. 2, § 237 et seq.; *Smith* v. *Old Colony & Newport R. R. Co.*, 10 R. I. 22.

3, 4. Complaint is made by counsel for defendant of the court's refusal to advise the jury to the effect that property owners adjoining the right of way of a railroad company assume the risk of injuries unavoidably produced by fire occurring without any negligence on the part of the company. From the cases cited in support of the instruction, it would seem that counsel have in mind the thought that property adjoining the right of way of a railroad is in a hazardous position, and therefore in more than ordinary danger from mere accidental fires. Whatever may be the exact rule concerning the relative rights of land owners adjoining and of those adjacent to railway tracks, with respect to accidental fires, it cannot be contended that either assumes the risk of the railroad company's negligence. Thompson, in his impressive Commentaries on the Law of Negligence (Vol. 2, § 2322), says:

"The fact that a land owner erects and uses a building for ordinary purposes near a railway track is not, in case of its destruction by a railway fire, imputable

to him as contributory negligence, although such building is more exposed to fire from the company's engines than if it were at a greater distance.''

We think the rejected instruction embraced but a basal principle of the law of negligence, and was fittingly covered by the court in the following instruction:

''Gentlemen of the jury, you are hereby instructed that the burden of proof is upon plaintiffs to establish, by a preponderance of the evidence, that the dryer in question was set afire by the negligence of the defendant railroad company.   It is not every fire that occurs along the track of a railroad company that such railroad company is liable for, even though property was destroyed by fire set by sparks coming from engines of the company.   It is only when there is negligence or carelessness on the part of the company in managing its engine and fires, that there is a liability on the part of the company; and the burden of proof is upon the plaintiff to show by a preponderance of the testimony, not only that the fire was set from sparks coming from the defendant's engine, but also that there was negligence on the part of the defendant in allowing its engine to get out of repair so as to allow the sparks to escape, if you find they did escape, or negligence on the part of the company in employing unskillful or negligent employees, and, if the plaintiff does not establish such negligence by a preponderance of the testimony, your verdict must be for the defendant.''

5. In giving the following instruction to the jury, exception is taken:

''It is the duty of the railroad company to adopt the most improved mechanical inventions and appliances to prevent the escape of sparks, fire and cinders, and to exercise reasonable diligence and precaution in equipping engines used by it upon such railroad with such inventions and appliances, and to exercise ordinary care and diligence to keep such appliances in good re-

pair, and when operating said engines to provide skillful and competent help to operate the same.''

Counsel for defendant argue that this instruction infers that an absolute duty rests on defendant to do no damage to property on account of the escape of fire. Continuing the argument, counsel say:

''That if defendant uses ordinary and reasonable care and do 'damage property,' it would still be liable under the instruction.''

Dependence is had upon the case of *Anderson* v. *Oregon R. R. Co.,* 45 Or. 211 (77 Pac. 119), wherein Mr. Justice Wolverton said:

''The general rule seems to be that the company must adopt the most approved mechanical inventions and appliances to prevent the escape of fire; but that, when it has exercised reasonable diligence and precaution in obtaining and putting them into practical use, it has discharged its duty to those who are subject to the dangers incident to the escape of fire.''

This rule of law seems to have been seated in the mind of the trial court while instructing the jury when consideration is given to the whole of the charge. In the third instruction, the court said, in purport, that, if the fire was caused by sparks emitted from a locomotive, a presumption of negligence arises against the defendant as to the equipment of its engine, and, unless that presumption is rebutted by defendant, showing it had adopted the most approved appliances and inventions for the prevention of the escape of fire and cinders from the engine, it was the duty of the jury to find for plaintiffs. In another instruction, the court told the jury they should find for plaintiffs if they were satisfied that ''sparks, cinders and fire were emitted by reason of the carelessness and negligence of the defendant in failing to use ordinary and reasonable

care to have its locomotive in repair, or failing to use ordinary and reasonable care to equip the same with the most approved appliances for arresting sparks, etc.''  Again, the court spoke to the jury:

"If you find from the testimony that the defendant railroad company did operate its trains and engines past the dryer, and that at the time had fire in the engine, and that the defendant exercised such right in a careful manner, and with care and circumspection, using the most approved appliances to prevent the escape of fire, and exercised due care and skill in the management of its locomotive, then I instruct you that, even though the fire was caused by the emission of sparks from the engine, there is no liability on the part of the defendant, and your verdict should be for the defendant.''

From a study of these instructions we cannot say the court spoke of defendant's duty to provide its engines with the most approved appliances for preventing the escape of sparks as an absolute one.  It is true that the first expression of the court, standing by itself, imposes a peremptory and unconditional duty upon defendant to adopt the most approved appliances.  If this is a vice, it is attributable to the manner of expression doubtlessly arising from the peculiar statement of the general rule in *Anderson* v. *Oregon R. R. Co.,* 45 Or. 211 (77 Pac. 119).  What the trial court did tell the jury in substance and in fact was that a positive and unqualified duty rested upon the railroad company to exercise reasonable diligence and precaution in procuring and in utilizing the most approved mechanical inventions and apparatus to prevent the escape of fire, coals, sparks or cinders.

Other errors are assigned, but we deem them harmless, and therefore we feel it our duty to affirm the judgment of the Circuit Court.      AFFIRMED.