Argued October 31, affirmed December 12, 1916.

## MT. EMILY TIMBER CO. v. OREGON–WASHING-
## TON R. & N. CO.*

(161 Pac. 398.)

**Railroads—Operation—Fires—Admissibility of Evidence.**

1. In an action for damages caused by fire alleged to have been
set by defendant's locomotive, the rule justifying the admission of
evidence of other fires set by defendant's locomotives will not render
admissible testimony that twelve days after the fire a witness saw

*The question of variance between allegations and proof as to
time, in action against railroad company for setting out fires, is
discussed in a note in 41 L. R. A. (N. S.) 635.        Reporter.

burned-over areas within the right of way; there being no testimony of the passing of engines at or immediately prior to the ignition of a fire.

### Railroads—Operation—Fires—Instruction.

2. In an action for damages caused by fire alleged to have been set by defendant's locomotive, where the evidence did not suggest a deficiency in number of men, and did not bear on the incompetency of mechanics, machinists, fire patrol or laborers, an instruction withdrawing from the jury the consideration of allegations that defendant failed to employ competent or careful mechanics or machinists to repair its engines or to use careful or sufficient fire patrols, sectionmen or laborers to protect the right of way and adjacent land from fires, was properly given.

### Trial—Operation of Railroads—Fires—Instructions.

3. In an action for damages caused by fire alleged to have been set by defendant's locomotive, an instruction complained of, taken with another given instruction, *held* to put the question of care required of defendant in procuring and utilizing appliances to prevent the escape of fire from its locomotives fairly before the jury and to enjoin the proper degree of care upon the defendant.

### Railroads—Operation—Fires—Instruction.

4. As modern science and ingenuity have not yet reached a point of perfection or state where it is possible to propel steam locomotives in such manner as to absolutely prevent the escape of sparks of fire, the law does not require of a railroad company more than such reasonable care and diligence as the state of science will admit, nor make it liable for fires caused by the escape of ordinary and usual quantities of sparks while the engine is operated in the ordinary course of business by competent employees.

### Railroads—Operation—Fires—Negligence.

5. In an action for damages caused by fire alleged to have been set by defendant's locomotive, although negligence may be inferred from circumstantial evidence, in order to establish negligence plaintiff must prove by a preponderance of evidence that the fire was communicated by sparks from defendant's locomotive, excluding every other theory as to the cause or origin of such fire.

### Trial—Degree of Proof—Instructions.

6. Under Section 688, L. O. L., providing that the law does not require a degree of proof beyond moral certainty or that degree of proof which produces conviction in an unprejudiced mind, and Section 868, subdivision 5, making it the duty of the court to instruct that in civil cases the affirmative of the issue shall be proved, and the finding on contradictory evidence shall be according to the preponderance, in an action for damages for fire alleged to have been caused by defendant's locomotive, an instruction that the law does not require absolute proof or absolute certainty and is satisfied when a jury of unprejudiced minds, after hearing the testimony, have an abiding conviction of the truth of the claim, and that it is incumbent upon plaintiff to prove the same by a preponderance of competent evidence, was proper.

[As to presumption of negligence arising from communication of fire by railroad engine, see note in Ann. Cas. 1913E, 971.]

From Union: John W. Knowles, Judge.

In Banc.  Statement by Mr. Justice Bean.

This is an action by the Mt. Emily Timber Company, a corporation, against the Oregon-Washington Railroad & Navigation Company, a corporation, to recover damages to timber and trees growing on plaintiff's land, caused by a fire alleged to have been occasioned by the negligence of defendant.  The cause was tried to the court and jury and a verdict rendered in favor of defendant.  From a resulting judgment, plaintiff appeals.

The particular allegations of negligence in the complaint are:

(1)  That during the summer of 1914, and more especially on the twelfth day of August, 1914, the defendant neglected and failed to keep its said right of way through said sections (21 and 22) free and clear of dry grass, weeds and other vegetation, trash, debris and combustible material, but wrongfully and negligently allowed the grass, weeds and other vegetation to grow, mature and dry and accumulate with other debris, trash and combustible materials upon said right of way in sections 21 and 22, in large quantities, thereby rendering and making the same subject and liable to be set on fire by sparks, cinders and brands from defendant's engines, locomotives, cars and trains passing through said sections, and thereby communicating such fires to the adjacent lands and timber.

(2)  That during said summer of 1914, and more especially on or about the twelfth day of August, 1914, the defendant failed, neglected and omitted to provide its engines, locomotives, cars and trains with effective, sufficient or suitable netting, spark-arresters, mechanism, fire and draft apparatus, so as to prevent sparks, cinders and brands from being blown and forced from such engines, locomotives, cars and trains at, upon and over said right of way and the adjacent lands thereto,

or to keep the same in an effective state of repair during said time.

(3) That the defendant, during said times, and more especially on or about the twelfth day of August, 1914, omitted, neglected and failed to employ and place in charge of said engines, locomotives, cars and trains competent, careful or suitable engineers, firemen or trainmen.

(4) Or to employ competent or careful mechanics or machinists to properly overhaul and keep in an effective state of repair said engines, locomotives, cars and trains, or the fire apparatus, spark-arrester, netting and drafts thereon.

(5) Or to employ and use careful, competent or sufficient fire patrol, sectionmen and laborers upon said railroad track and right of way, so to keep such right of way free and clear of grass, weeds and other vegetation, debris, trash and combustible materials.

Defendant denied any negligence on its part, and pleaded that at or about the time the fire broke out train extra 507 west passed that point, and that no other train had passed there for two hours or more before that; that this train was pulled by two engines of first-class construction properly maintained, in good condition and repair, and each equipped with suitable and proper spark-arresting devices, including proper and suitable mechanism, netting and fire and draft apparatus, all of which appliances were continuously during the time in a proper condition and repair; that the train was operated along the track and right of way in the usual and customary course of the railroad company's business; that due and reasonable care was used by the defendant in acquiring, keeping, maintaining and equipping its locomotives and all the parts thereof in a safe, suitable and secure condition for the prevention of the escape of fire therefrom and to properly and skillfully operate them.

The reply put in issue the most of the defendant's answer.

The evidence introduced tended to show the case as made by plaintiff substantially as follows: During all the times involved in this controversy plaintiff was the owner of a large tract consisting of several thousand acres of mountain timber lands, a portion of which is located in sections 21 and 22, township 2 south, range 36 east, Willamette Meridian. The defendant owns a right of way for its railroad which passes through the sections named and adjoins the plaintiff's premises. The lands and right of way involved are located on the eastern slope of the Blue Mountains, between Hilgard and Kamela, a distance of approximately four miles west of the former place, to what is known as the lower or eastern end of Glover Siding. The distance between the beginning of the siding and Glover Station, the upper point, is about three fourths of a mile and extends up a steep grade climbing the mountain in a westerly direction to the Glover Section-house. On August 12, 1914, a fire occurred along or near the defendant's right of way, and the testimony tends to show that at the lower point, known as the siding, a fire either started within the right of way and burned out to the lands of the plaintiff, or from the outside burned to and within the right of way a distance of perhaps 25 feet. At the upper point, also, a fire started at or about the same time either within the right of way or just outside, and burned a distance of 25 feet within the right of way. The tracks of each of the fires widened out as they passed out of the right of way, and after getting out on to the lands of the plaintiff converged together into one large fire that spread out and burned over approximately 2,000 acres of timber and brush lands, much of which had been

logged off, causing damage as claimed by the plaintiff to the extent of about $10,000. The fire, according to the testimony, started somewhere between 10 and 12:30 o'clock, either on the defendant's right of way or in the immediate vicinity thereof, and in a very short time thereafter was beyond control. The day was dry and hot. The locality where the fire originated was a steep grade. The right of way was covered with a heavy growth of dry grass which had not been mowed or cleared off during the year 1914. The day of the fire thirteen locomotives of the defendant company passed over the track and along the points where the fire occurred. Two heavy freight trains, each being hauled by two engines, passed upgrade in a westerly direction along the fire line. One of them, extra freight No. 507, drawn by engines 507 and 700, passed through the siding going west at about 11 o'clock a. m., and consisted of 51 freight-cars. Engine 507 was at the head of the train, and engine 700, known as the "helper," was located 14 cars from the rear. No. 23, another freight train, passed over the line at about 12:30 o'clock going west and upgrade at the points where the fire occurred. It was drawn by two engines, Nos. 511 and 702, and consisted of a train of 40 cars. Other locomotives that passed the point in controversy during the day hauled the passenger trains or were engines passing back and forth as helpers of other trains. The two helper engines, 700, which hauled extra freight train 507, and engine 702, which hauled freight train No. 23 west, had not been inspected during the month of August, except once, on the 20th and 25th, respectively. No record appears of any prior inspection of either locomotive. No. 17, a passenger train, passed the place in controversy going upgrade at 9:30

or 9:35 A. M. on the 14th, and was drawn by locomotive No. 210.

The testimony shows that this locomotive was inspected on August 15th, and the spark-arrester and basket were found to be out of repair and defective. The large helper engines, 700 and 702, which drew the freight trains westward on that day, both contained wire netting known as 2½ by 2½, while the other engines were supplied with spark-arrester and wire netting of a finer grade and known as 4x4 netting. About 12 days after the fire, Mr. J. T. Williamson visited the scene and inspected the premises. The testimony offered tends to show that for several feet outside the right of way at both the lower and upper points described and all along the line upgrade between the two, the right of way and the adjacent grounds of the plaintiff were thickly sprinkled with coal cinders varying from dust up to the size of a man's finger-nail. Some of these cinders were old and others new and fresh. Between the lower and the upper points along the siding, nine separate fires had occurred within the right of way of the defendant. At the trial in making its case in chief plaintiff was compelled to rely upon circumstantial evidence to establish its case, as the place where the fire broke out is located in the Blue Mountains at rather a remote spot.   AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. James H. Raley* and *Mr. John S. Hodgin.*

For respondent there was a brief over the names of *Mr. Charles E. Cochran, Mr. William W. Cotton* and *Messrs. Crawford & Eakin,* with an oral argument by *Mr. Cochran.*

Mr. Justice Bean delivered the opinion of the court.

1. The plaintiff makes eight assignments of error. The first is the exclusion from consideration by the jury of certain evidence of other fires upon the defendant's right of way in that locality and rejection of evidence of the same purport. Exceptions were saved to seven instructions given to the jury. Mr. Williamson, manager of the timber company, testified in part on behalf of plaintiff as follows:

"It is a north slope all along there inside of the right of way and in the pine grass along these cuts between the block signal station, between the siding and Glover Section-house, I found where there has been nine fires started fresh; all appeared to be, might have been, at the same time, and two had been some time before. I will say that every fire I found—some of them had only burned, just were fires in the grass inside the right of way, and inside the fence and to the best of my knowledge within a hundred feet."

Counsel for defendant moved the court to take this evidence from the jury. The court ruled that the motion should be allowed unless it should be shown that an engine of defendant passed along just prior to the fires being set out. The discovery of these other fires was made by the manager of the plaintiff some 10 or 12 days after the fire of which complaint is made. By instruction 12, the court charged the jury in effect that the mere presence along the right of way of small burned-over areas was not a circumstance justifying any inference of liability of negligence on the part of defendant. These rulings constitute two of the assignments of error which we will consider together. There was no evidence tending to show that any of the defendant's engines passed this point prior to the other fires mentioned by Mr. Williamson or to connect

their origin with the company's engines.   The rule justifying the admission of evidence of other fires set by defendant's engines does not admit testimony to the effect that 12 days or so after the fire a witness saw burned-over areas within the right of way; there being no testimony of the passing of engines at or immediately prior to the ignition of a fire: *Hawley* v. *Sumpter Ry. Co.*, 49 Or. 509, 519 (90 Pac. 1106, 12 L. R. A. (N. S.) 526); *Taffe* v. *Oregon R. & N. Co.*, 60 Or. 177, 180 (117 Pac. 989); 67 Am. & Eng. R. R. Cas. (N. S.) 130; *La Salle* v. *Central R. R. of Oregon,* 73 Or. 203 (144 Pac. 414).   Evidence of other fires is admissible only by showing the same to have seasonably followed in the wake of an engine from whose stack sparks were being emitted: *Koontz* v. *Oregon R. & N. Co.,* 20 Or. 3, 16 (23 Pac. 820); *Hartford Ins. Co.* v. *Central R. R. of Oregon,* 74 Or. 144, 149 (144 Pac. 417).   In *Hawley* v. *Sumpter Ry. Co.,* 49 Or. 509 (90 Pac. 1106, 12 L. R. A. (N. S.) 526), two witnesses deposed over objections that they had seen other fires along defendant's right of way, but there was no evidence tending to show the origin of the fires or that the defendant was in any way responsible for them.   At page 520 of 49 Or. (page 1110 of 90 Pac. [12 L. R. A. (N. S.) 526]), the court ruled as follows:

"The plaintiff having failed to offer in connection with the testimony of these two witnesses, to which objection was made, any testimony tending to connect, either directly or remotely, any of the fires mentioned by them with the operation of the road by defendant, such testimony was not admissible. * * "

The ruling of the court in these respects was in conformity with the settled law.

2. Error is predicated upon instructions Nos. 10 and 11, whereby the jury were told that they should not

82 Or.—13

consider the allegation that defendant failed to employ competent or careful mechanics or machinists to keep in a state of repair its engines, or use careful, competent or sufficient fire patrols, sectionmen or laborers, to protect the right of way or adjacent land from fire. By the bill of exceptions the trial judge certified the following statement:

"There was no testimony relating to the competency of the enginemen, firemen and trainmen. Neither was there any testimony introduced tending to show that the defendant failed to employ competent or careful mechanics or machinists to properly overhaul its engines, locomotives, cars or trains, or any part thereof. Nor was there any testimony offered that the defendant failed and neglected to employ or use careful or sufficient fire patrols, sectionmen or laborers, whereby to protect the right of way."

It is contended by plaintiff that the testimony that defendant's right of way was covered with a growth of grass, weeds and debris was in itself evidence tending to show that defendant had not had competent laborers upon it. In order to fully understand these instructions it is necessary to notice the other parts of the charge.

The trial court charged the jury as follows:

No. 2. "I instruct you that if you find from the evidence in this case that the property alleged in the complaint, or any part thereof, was destroyed by fire communicated to it from an engine, or engines, of the defendant railroad company, and in the manner and at the place named in the complaint, the fact that such property was so destroyed raises a presumption of negligence on the part of the defendant company, either in the construction, management or operation of the engine or engines from which the fire was so communicated or in the exercise of proper care of its right of way, and casts upon the defendant railroad

company the burden of proof of overcoming such pre-
sumption of negligence by evidence which you believe
to be true.''

No. 3. ''I instruct you that it was the duty of the
defendant railroad company to exercise reasonable
diligence, care and precaution in procuring and utiliz-
ing, and keeping in good repair, the most approved
mechanical inventions and apparatus to prevent the
escape of fire, coals, sparks and live cinders; and if
from the evidence in this case you find that the de-
fendant railroad company did not exercise such rea-
sonable diligence, care and precaution in producing
and utilizing and keeping in repair the most approved
mechanical inventions and apparatus to prevent the
escape of fire, coals, sparks and live cinders, and that
by reason thereof plaintiff's property was destroyed in
the manner alleged in its complaint, then your verdict
should be for the plaintiff. * * ''

No. 4. ''I instruct you that it is the duty of the de-
fendant railroad company to exercise reasonable care,
precaution and skill in the operation, handling and
management of its engine or engines, and if you find
from the evidence in this case that the defendant rail-
road company did not use such care, precaution and
skill, and by reason thereof the plaintiff's property
was destroyed by fire in the manner alleged in the
complaint, then your verdict should be for the plain-
tiff. * * ''

No. 6. ''I instruct you that if you further find that
the right of way of the defendant had not been mowed
during the period from the first day of June, 1914, to
the first day of July, 1914, at the point where the fire
started, and that the fire was started by sparks from
the engine or engines of the defendant thrown upon
such unmowed grass or weeds upon such right of way,
then such presumption of negligence is conclusive and
cannot be overcome by evidence, and your verdict must
be for the plaintiff. If, however, you should find from
the evidence in this case that the right of way had been
mowed between the first day of June, 1914, and the first
day of July, 1914, and you should further find that the

fire was started by sparks from the defendant's engine
or engines at some point on defendant's right of way
that had been mowed between the first day of June,
1914, and the first day of July, 1914, then such pre-
sumption of negligence is not conclusive, but may be
overcome by evidence which you believe that the de-
fendant was not negligent in any of the respects
charged in the complaint relating to the equip-
ment. * * "

See Section 6984, L. O. L.

It will therefore be seen that, whether the railroad
company employed 5 or 500 sectionmen on this section,
the matter of keeping the right of way free from grass
and debris was fairly submitted to the jury, and so,
also, was the question of the care and management of
the defendant's engines. The two instructions com-
plained of relate to the competency and skill of the
employees. The evidence did not suggest that there
was a deficiency in the number of men employed for
those purposes, and the bill of exceptions discloses no
evidence bearing upon the competency of the mechanics
or machinists or concerning fire patrols or laborers.
In order to direct the jury in the consideration of the
issues, it was proper for the court to withdraw from
them certain charges of negligence assigned in the com-
plaint as a ground of recovery when requested to do
so, when the same was not supported by the evidence.
Otherwise, in case of a verdict in favor of plaintiff, it
would have been impossible to know but that the com-
plaint had been remembered by the jury as evidence
and a verdict based upon the claim of negligence in
those respects, when there was no evidence to support
it: *Chicago, St. P., M. & O. Ry. Co.* v. *Kroloff,* 217 Fed.
525, 528 (133 C. C. A. 377). While it is a difficult and
delicate matter for the trial court to bear in mind all
the evidence during the trial of a cause so as to be able

to so instruct, we are not referred to any competent testimony supporting the issues which was not submitted to the jury and find no error in the ruling.   Evidently the jury may have found that the right of way was not kept free from grass and debris, but that the fire did not originate upon such right of way, thus eliminating the question of care in this respect.   Of course, the defendant would not be liable for a want of care unless an injury resulted therefrom.   The essential facts for the consideration of the jury in regard to the care and condition of the engines of defendant were whether or not the railroad company had exercised reasonable care in procuring and utilizing the most modern inventions, apparatus and appliances to prevent the escape of fire and to properly inspect and maintain the same in good condition.   By instruction No. 3, above quoted, the jury were told in effect that if they found there had been a lack of such care and precaution on the part of the railroad company, and that by reason thereof plaintiff's property was destroyed by fire, they should find a verdict for plaintiff.   In other words, the jury was informed in substance that even though the employees of defendant were competent, if there was negligence in the matters detailed and injury ensued, the defendant would be liable.   The instruction given requires servants of the defendant to exercise their ability, and it fairly submitted to the jury the matter of equipping, maintaining and managing the engines of defendant.

3. Plaintiff complains of instruction No. 13, which is as follows:

"I further instruct you that it is the duty of the defendant to exercise reasonable diligence, care and precaution in procuring and in utilizing the most approved mechanical inventions, apparatus and appliances to

prevent the escape of fire, coals and sparks, and to exercise reasonable care by appropriate inspection and repair to maintain such appliances in good condition. Now, if you find from the evidence that the defendant has used reasonable care and exercised reasonable diligence and precaution in obtaining and putting into practical use such appliances and to maintain them as such, then it has fully discharged its legal duty to all those subject to the danger incident to the escape of fire, and even if a fire shall occur therefrom, notwithstanding the defendant has used such care, diligence and precaution, then it will be your bounden duty to return a verdict for the defendant.''

This part of the charge, taken together with instruction No. 3, puts the question fairly before the jury and enjoins the proper degree of care upon the railroad company: *Anderson* v. *Oregon R. R. Co.*, 45 Or. 215 (77 Pac. 119); *La Salle* v. *Central R. of Oregon*, 73 Or. 203, 211 (144 Pac. 414); *Lesser Cotton Co.* v. *St. Louis etc. Ry. Co.*, 114 Fed. 133, 141, 52 C. C. A. 95.

4. Instruction No. 14 is challenged. It reads thus:

''Now, the jury will note that modern science and ingenuity have not yet reached a point where it is possible to propel steam locomotives in such a manner as to absolutely prevent the emission of sparks or fire in their operation. The law does not require that locomotive engines used in the manner the defendant uses the same shall be so constructed, equipped or managed so that no sparks of fire shall escape from them, and so if sparks shall be emitted from the locomotives in ordinary and usual quantities, that is to say, such quantities as naturally would be emitted from an engine upon which the railroad company shall have used reasonable care, diligence and precaution in equipping with modern and approved spark-arresting devices, and shall have operated in its usual course of business by competent employees, and a fire occurs from such sparks, the defendant will not be liable.''

We approve this instruction. The law does not require of a railroad company care beyond that which the state of the art and the progress of invention and science will admit. Modern science and ingenuity have not yet reached a point of perfection or a state where it is possible to manage or propel steam locomotives in such manner as to absolutely prevent the escape of sparks of fire: *Spaulding* v. *Chicago & N. Ry. Co.,* 30 Wis. 110, 125 (11 Am. Rep. 550); *Menomonie River Sash & Door Co.* v. *Milwaukee & N. R. Co.,* 91 Wis. 447 (65 N. W. 176, 179); *Gainesville etc. R. Co.* v. *Edmondson,* 101 Ga. 747 (29 S. E. 213). In *Chenoweth* v. *Southern Pac. Co.,* 53 Or. 111, 119 (99 Pac. 86, 89), this court said:

"Evidence that the engine, just prior or subsequent to the fire, scattered sparks, is not sufficient to impute negligence. It is only when emitting them in unusual quantities or of unusual size that it has that effect."

5. Instruction No. 16 is excepted to and is of the following purport: That the plaintiff could prove liability against the defendant for the consequence of the fire in question by circumstantial evidence from which the jury could reasonably infer negligence; that the facts and circumstances established to the satisfaction of the jury by the preponderance of the evidence must not only be sufficient to justify an inference of negligence, but must exclude every other theory as to the cause or origin of such fire. The instruction embodies the law of circumstantial evidence, and the purport thereof is to require the fact to be proved by a preponderance of the evidence; that is, if the facts and circumstances show two ways or conditions to exist as a result of which the railroad company would be liable, and also three other ways or conditions for which the railroad would not be liable, then the jury was charged that the

evidence must preponderate in favor of one or more of the conditions for which the railroad would be liable. This charge was necessary in order to prevent the jury from speculating that the fire occurred on account of some negligent act of defendant when the evidence, according to their belief, might just as strongly have showed that it happened in some other manner. In 13 Am. & Eng. Ency. Law (2 ed.), p. 512, the rule is stated:

"It must be obvious that evidence that the fire in question merely might have originated from the defendant's engines, or even proof tending to show that it did, is not entitled to much weight, unless the possibility of origin from other sources is excluded."

In order to establish a charge of negligence on the part of the railroad company, it is not enough for plaintiff to show a possibility or even a probability that the fire was communicated to the property by sparks from its locomotives, but it must prove by a preponderance of affirmative evidence that it did so originate: 33 Cyc. 1367. Plaintiff argues that this part of the charge requires proof beyond a reasonable doubt. This contention is not in accord with our views. The instruction complained of is not subject to the criticisms made by the plaintiff.

6. Again, complaint is made of instruction No. 17, by which the court charged the jury that the law does not require absolute proof or absolute certainty, and is satisfied when a jury of unprejudiced minds, after hearing the testimony, have an abiding conviction of the truth of the claim; that it is incumbent upon the plaintiff to prove the same by competent evidence whereby from a preponderance thereof they are satisfied that the claim has been established: *Minnesota*

*Sash & Door Co.* v. *Great Northern Ry. Co.,* 83 Minn. 370 (86 N. W. 451, 454); *Gibbons* v. *Wisconsin Valley R. Co.,* 58 Wis. 335 (17 N. W. 132); *Gracy* v. *Atlantic Coast Line R. Co.,* 53 Fla. 350 (42 South. 903, 908); *Brown* v. *Atlantic & Air Line Ry. Co.,* 13 Am. & Eng. R. R. Cas. 479, 483. The information thereby imparted to the jury was in accordance with the statute.

Section 688, L. O. L., declares the standard of certainty in respect to civil cases, as follows:

"The law does not require demonstration; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty, because such proof is rarely possible. Moral certainty only is required, or that degree of proof which produces conviction in an unprejudiced mind."

Section 868, subdivision 5, L. O. L., makes it the duty of the court to instruct on all proper occasions that in civil cases the affirmative of the issue shall be proved, and, when the evidence is contradictory, the finding shall be according to the preponderance of the evidence. As we understand the record, it was the theory of the plaintiff that the fire complained of originated upon the railroad company's right of way and was occasioned by the negligence of the defendant. The theory of the defendant seems to have been that the fire did not originate upon defendant's right of way and was not caused elsewhere by the negligence of the defendant.

A careful examination of the whole charge given by the trial court to the jury leads us to believe that the disputed questions of fact were fairly submitted to the jury. We have nothing to do with the weight of the evidence. It is the special province of the jury to pass upon questions involving that question. The jury

found in favor of the defendant, and the judgment based thereon must be upheld.

Finding no error in the record, the judgment of the lower court is affirmed.                    AFFIRMED.